**OKLAHOMA PUBLISHING COMPANY, Plaintiff,**

v.

**KANSAS CITY FIRE AND MARINE INSURANCE COMPANY, Employers Reinsurance Corporation, Houston General Insurance Company, Old Republic Insurance Company, Puritan Insurance Company and Reliance Insurance Company, Defendants.**

**No. CIV–90–1251–A.**

United States District Court, W.D. Oklahoma.

Oct. 21, 1992.

James M. Chaney, James E. Golden, Jr., Kirk & Chaney, Oklahoma City, Okl., Allan Gates, Mitchell Williams Selig & Tucker, Little Rock, Ark., for plaintiff Oklahoma Publishing Co.

Robert N. Sheets, Roy J. Davis, Phillips McFall McCaffrey McVay & Murrah, Heather L. Hintz, Murrah & Davis, Oklahoma City, Okl., Mitchell L. Lathrop, Kathy P. Waring, Roger D. Brown, Adams Duque & Hazeltine, San Diego, Cal., for defendants Employers Reinsurance Co. and Puritan Ins. Co.

Larry D. Ottaway, Monty B. Bottom, Foliart Huff Ottaway & Caldwell, Oklahoma City, Okl., Roger D. Brown, San Diego, Cal., for defendant Houston Gen. Ins. Co.

Brenda K. Penland, C. Todd Ward, Donald R. Wilson, Dale Reneau, Fenton Fenton Smith Reneau & Moon, Oklahoma City, Okl., Roger D. Brown, San Diego, Cal., for defendant Old Republic Ins. Co.

Tim N. Cheek, John D. Cheek, Cheek Cheek & Cheek, Brenda K. Penland, Dale Reneau, Oklahoma City, Okl., Roger Westendorf, Thomas A. Gordon, Loren D. Podwill, Bullivant Houser Bailey Pendergrass & Hoffman, Portland, Or., for defendant Reliance Ins. Co.

Albert L. Tait, Jr., Oklahoma City, Okl., for defendant Kansas City Fire and Marine Ins. Co.

## ORDER

ALLEY, District Judge.

Plaintiff, Oklahoma Publishing Company ("OPUBCO"), brings this action against its insurance carriers to recover expenses incurred as a result of claims asserted against it by the United States Environmental Protection Agency ("EPA"). OPUBCO asserts that its primary insurance carriers [1] owe a duty to defend it against the claims presented by the EPA. OPUBCO also seeks a declaration that it is entitled to indemnification from both its primary and excess [2] carriers for any damages it may be obligated to pay as a result of the EPA's actions. The insurance companies have denied coverage, citing the pollution exclusion clauses in the respective policies of insurance.

 This matter is before the Court on various motions for summary judgment.[3]

---

1. During various periods from 1972 to 1983, plaintiff was covered by primary comprehensive general liability ("CGL") insurance issued by Kansas City Fire and Marine Insurance Company ("Kansas City") and Reliance Insurance Company ("Reliance").

2. In addition to being a primary carrier, Reliance also issued umbrella CGL policies for the period January 1, 1976 through January 1, 1980. The remaining excess carriers are Employers Reinsurance Corporation, Puritan Insurance Company, Houston General Insurance Company and Old Republic Insurance Company.

3. Between them, the parties have filed six motions for summary judgment. In addition to the Insurers' Joint Motion for Summary Judgment, four separate motions were filed on behalf of the excess carriers. OPUBCO also filed a separate motion for summary judgment against the primary carriers on this duty to defend issue.

Summary judgment is appropriate if the pleadings, answers to interrogatories, affidavits and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

## BACKGROUND

On June 25, 1986, the EPA filed a civil action in the Western District of Oklahoma against Royal N. Hardage, the owner/operator of a waste disposal site in Criner, Oklahoma. *See United States v. Hardage*, Case No. CIV–86–1401–W (W.D.Okla. filed June 25, 1986) ("the *Hardage* Action"). In addition to Hardage, the EPA named as defendants thirty-one companies, including OPUBCO, who generated waste that was disposed of at the Criner facility and three companies that transported waste to the site. The *Hardage* complaint alleged that OPUBCO

> is a Delaware corporation who arranged for disposal or arranged for transport for

disposal at the site of hazardous substances owned or possessed by Oklahoma Publishing and has contributed to the handling, storage, treatment or disposal of solid or hazardous wastes at the site.

Exhibit A to Insurers' Joint Motion for Summary Judgment[4] at ¶ 31. In addition to injunctive relief, the EPA sought reimbursement from the defendants "for all investigatory, enforcement, and other response costs" and "for future costs incurred by the United States, including but not limited to, expenditures for sampling, identifying and analyzing site wastes and oversight of all work." *Id.* at 30, ¶ C.

On January 12, 1989, the EPA issued a General Notice Letter to OPUBCO and six other companies notifying them of potential liability under CERCLA[5] for the disposal of waste at the Mosley Road Landfill in Oklahoma City, Oklahoma. *See* Exhibit Q to Insurers' Joint Motion for Summary Judgment. The EPA alleged that OPUBCO arranged "for the disposal, treatment, or transportation for disposal or treatment, of hazardous substances found at the facility." *Id.* at 2.

OPUBCO does not dispute that it disposed of hazardous waste at both the Criner facility and the Mosley Road site.

> The waste ink and solvent that OPUBCO disposed of at the Hardage and Mosley Road sites were initially collected in the pressroom in a 55–gallon temporary container. When this container was full, its contents were transferred to an underground tank on OPUBCO's premises that held approximately 1200 gallons. When the tank became full, OPUBCO called Powell Sanitation. Powell pumped the waste ink and solvent into a tank truck, which transported the waste directly to the Hardage or Mosley Road site for disposal.

Exhibit F to Insurers' Joint Motion at 71.[6] Between 1972 and 1980, OPUBCO sent

---

**4.** Hereinafter cited as "Insurers' Joint Motion."

**5.** The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a).

**6.** Exhibit F represents OPUBCO's responses to defendants' Joint First Interrogatories and Requests for Production.

more than 250,000 gallons of waste to the Hardage site alone. *Id.* at 50.

The insurance policies at issue provides coverage for

all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** *to which this insurance applies,* caused by an **occurrence,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage,** even if any of the allegations of the suit are groundless, false or fraudulent.

Exhibit H to Insurers' Joint Motion at 14 (bold in original; emphasis added).[7] In addition, each insurance policy contains what is commonly referred to as a pollution exclusion clause. This clause provides:

This insurance does not apply:

\* \* \* \* \* \*

to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.][8]

The insurers rely on the pollution exclusion clause to justify their refusal to defend or indemnify OPUBCO against the EPA claims. They argue that "any claims for which OPUBCO seeks defense and indemnification are excluded from coverage because those claims arose out of *discharges* of pollutants into and upon land that were neither 'sudden' nor 'accidental.' " Insurers' Joint Memorandum at 3 (emphasis in original). OPUBCO counters that the pollution exclusion clause is ambiguous and therefore should be construed in favor of the insured to preclude coverage "only where a claim arises out of an environmental release that was expected and intended from the standpoint of the insured." [9]

### DISCUSSION

 As the parties' briefs reflect, interpretation of the phrase "sudden and accidental" in CGL policies has engendered substantial litigation throughout the country. The Oklahoma Supreme Court, however, has not yet construed this phrase, nor have the parties presented to the Court any decision from an intermediate Oklahoma court that has construed this language. Nonetheless, this Court is guided by Oklahoma's well-established rules for construing the language of insurance contracts. Under Oklahoma law, interpretation of an insurance contract is governed by the same rules of construction that are applicable to contracts generally. *Dodson v. St. Paul Ins. Co.,* 812 P.2d 372, 376 (Okla.1991).

---

7. This language is taken from Reliance Policy No. CI 7147863, which provided primary insurance coverage for the years 1974 through 1977. The Kansas City policy contains identical language. *See* Exhibit O to Insurers' Joint Motion at GL–2. The remaining primary policies issued by Reliance use the term "personal injury" in place of "bodily injury." The two terms are synonymous. *See* Exhibit I to Insurers' Joint Motion at 6, 8, 12 and Exhibit J at 6, 8. The umbrella policies issued by Reliance contain a similar insuring clause, except that the duty to defend does not extend to lawsuits that are within the scope of coverage provided by the underlying or primary insurance. *See* Exhibits K, L, M, N to Insurers' Joint Motion. The policies issued by the remaining excess carriers do not provide a duty to defend the insured. *See* Exhibits attached to the excess carriers' various motions for summary judgment.

8. *See* Exhibit H to Insurers' Joint Motion at 22; Exhibit I at 6; Exhibit J at 6; Exhibit K at 2; Exhibit L at 2; Exhibit M at 2; Exhibit N at 2; Exhibit O at GL–3 and Exhibits attached to the excess carriers' various motions for summary judgment.

9. OPUBCO's Brief in Opposition to Insurers' Joint Memorandum in Support of Motion for Summary Judgment at 2. In addition, OPUBCO argues that genuine issues of material fact exist regarding the nature of the environmental releases that gave rise to EPA's claims against OPUBCO and the prior conduct of the insurers in drafting and interpreting the pollution exclusion clause. *Id.* at 2–3. In light of the Court's interpretation of the pollution exclusion clause, the factual disputes raised by OPUBCO do not present issues regarding *material* facts. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The Oklahoma Supreme Court recently reiterated that:

> Parties to insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by the terms of contract and courts will not undertake to rewrite terms thereof. The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.

*Id. (quoting Wiley v. Travelers Ins. Co.,* 534 P.2d 1293, 1295 (Okla.1974)). Oklahoma law mandates that the language of a contract, if clear and unambiguous, must be construed in its plain and ordinary sense. While interpretation of a contract and whether it is ambiguous is a matter of law for the Court, "neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a [more] favorable consideration to either party than that expressed in the contract." *Id.* (citations omitted). Resort to extrinsic evidence to determine whether an ambiguity exists is not permitted; the Court must make this finding based on the language of the insurance contract and the applicable rules of construction. *See id.* at 376–77; *see also Messner v. Moorehead,* 787 P.2d 1270, 1273 (Okla.1990); *Mercury Investment Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985).

▐ Pursuant to these governing principles, the Court concludes that the insurance contracts at issue are not ambiguous. OPUBCO's attempt to create ambiguity by focusing on the word "sudden" is contrary to Oklahoma's rule of construction that contract language be construed as a whole, "so as to give effect to every part ... each clause helping to interpret the others." 15 O.S. § 157. While "sudden" may have more than one meaning if construed in isolation, it does not when interpreted in context. That context requires that the clause be construed as a whole, that is, the discharge of pollutants must be both sudden *and* accidental. OPUBCO's argument that "sudden" has no temporal component, but rather simply means "unexpected," relegates the word "accidental" to mere surplusage.[10]

In a recent decision, the Tenth Circuit Court of Appeals reached this same conclusion in interpreting an identical pollution exclusion clause. *Hartford Accident & Indemnity Co. v. USF & G,* 962 F.2d 1484 (10th Cir.1992). Although *Hartford* was a diversity case applying Utah law, the Court's reasoning is directly on point.[11]

> We think the "annexation" of "sudden" to "accidental" is precisely the issue: reading "sudden" without a temporal component renders "accidental" redundant. While both conditions might include "unexpected" or "unintended," "sudden" cannot mean "gradual," "routine" or "continuous." Since Utah law dictates each contract provision be given effect, the conjunctive association of "sudden" with "accidental" is exactly the point on which our interpretation turns. Dictionaries may indicate each word has several overlapping meanings. We can-

---

**10.** The Oklahoma Supreme Court has defined "accidental" as "happening by chance or unexpectedly, undesigned; unintentional; unforeseen or unpremeditated." *United States Fidelity and Guaranty Co. v. Briscoe,* 205 Okl. 618, 239 P.2d 754, 756 (1952). OPUBCO concedes that under Oklahoma law, "accidental" means "unexpected." OPUBCO's Brief in Opposition at 38 ("The term 'accidental' is construed under Oklahoma law as an event which proceeds from an unknown cause or is the unusual effect of a known cause and, therefore, unexpected.").

**11.** Oklahoma and Utah law both provides that contracts, including insurance policies, will be enforced according to their plain meaning. Under Utah law, courts must "accord insurance terms their ordinary usage and connotations, being 'obliged to assume' that language included therein was put there for a purpose, and to give it effect where its meaning is clear and unambiguous.'" *Hartford,* 962 F.2d at 1487 (quoting *Marriot v. Pacific Nat'l Life Assurance Co.,* 24 Utah 2d 182, 467 P.2d 981, 983 (1970)). Likewise, under Oklahoma law "[t]he terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Dodson,* 812 P.2d at 376.

not use only the redundant definitions, however. Giving effect to every provision obliges us to construe "sudden" and "accidental" as separate, conditional requirements for coverage. This interpretive rule thus removes any ambiguity created by common usage.

*Id.* at 1489 (citation omitted).[12]

OPUBCO's reliance on the Third Circuit's opinion in *New Castle County v. Hartford Accident and Indemnity Co.,* 933 F.2d 1162 (3d Cir.1991), is misplaced, especially in light of the clear precedent expressed by the Court of Appeals for this district. *New Castle* was based on Delaware law, which has rules of construction that differ markedly from those governing this case. "[U]nder Delaware law, a court 'must consider the context and circumstances surrounding the meaning of what otherwise appears to be clear and unambiguous language.'" *Id.* at 1196. In contrast, Oklahoma requires the court to give effect to unambiguous language without resort to extrinsic evidence. The Third Circuit itself noted this distinction when it was faced with construing "sudden and accidental" under the law of Pennsylvania. *Northern Ins. Co. v. Aardvark Associates,* 942 F.2d 189, 193 n. 4 (3d Cir.1991). The Court held that, because of differing rules of construction, *New Castle* did not control the Court's decision in *Aardvark Associates.* In *Aardvark Associates,* the Third Circuit held "that the exception for 'sudden and accidental' discharges applies only to discharges that are abrupt and last a short time. We reject Aardvark's argument that this phrase, under Pennsylvania law, includes other discharges that are unintended and unexpected." *Id.* at 193–94. As Pennsylvania, like Oklahoma, enforces insurance contracts according to their plain meaning and will not use extrinsic evidence to create an ambiguity, *id.* at 192–93, it is likely the Third Circuit would reject OPUBCO's argument as well.

Giving effect to both words, as the Court must under Oklahoma law, the Court concludes that the phrase "sudden and accidental" requires a discharge that is both abrupt and unexpected or unintended by the insured. As the discharges at issue here occurred over a number of years in accordance with OPUBCO's intended disposal plan, they cannot as a matter of law be deemed to be "sudden and accidental." *See Hartford,* 962 F.2d at 1489 " 'sudden and accidental' precludes coverage of damage from continuous or routine business practices."). Routine discharges over a period of years cannot be viewed as "sudden." Likewise, in no event can such purposeful conduct be deemed to be "accidental." *See id.* at 1488.

OPUBCO's argument that it did not intend the *resulting* discharges of pollution that occurred at the Hardage and Mosley Road sites is unavailing. For purposes of the pollution exclusion clause, it is the *initial* discharge that is relevant. *See Broderick Investment Co. v. Hartford Accident & Indemnity Co.,* 954 F.2d 601, 607 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992). OPUBCO admits that it intended to dispose of its waste at the Hardage and Mosley Road sites; that it did not intend the resulting *damage* from that intentional act does not alter the fact that the *discharge* was deliberate.[13] As such, the damage arising out of OPUBCO's discharges is not covered under any of the insurance policies at issue. Thus, OPUBCO is not entitled to indemnification from any of the defendant insurers.

■ The duty to defend, however, presents a separate issue. Under Oklahoma law, the duty to defend is a distinct obligation, separate from the duty to indemnify. *See Conner v. Transamerica Ins. Co.,* 496 P.2d 770 (Okla.1972). Nonetheless, "a liability insurer is not obligated to defend an action against its insured where the

---

**12.** On May 20, 1992, the Court issued an Order directing the parties to file briefs discussing the relevance to this proceeding of the Tenth Circuit's opinion in *Hartford.* The Court is not persuaded by OPUBCO's attempts to distinguish *Hartford.*

**13.** In making this ruling, the Court does not imply the existence of any subjective culpability on OPUBCO's part for the environmental damage.

insurer would not be liable under its policy for any recovery in such suit." *Massachusetts Bay Ins. Co. v. Gordon,* 708 F.Supp. 1232, 1234 (W.D.Okla.1989). *Accord Dodson,* 812 P.2d at 378. Given the Court's ruling that coverage does not exist, the Court concludes that the primary insurers likewise had no duty to defend OPUBCO in the *Hardage* action or the Mosley Road proceeding.[14]

## CONCLUSION

Defendants' Motions for Summary Judgment are GRANTED. OPUBCO's Motion for Summary Judgment is DENIED. Judgment will enter accordingly.

It is so ordered.

---

**14.** The duty to defend only applies to "any *suit* seeking damages." In light of the Court's ruling that no coverage exists, the Court need not determine whether the Mosley Road administrative action constitutes a "suit" within the meaning of the primary insurance policies.