DOWNTOWN AIRPARK, INC., a Delaware corporation, Plaintiff–Appellant,

v.

CONTINENTAL INSURANCE COMPANY, a New Hampshire corporation; Fireman's Fund Insurance Company, a California corporation, Defendants–Appellees.

UNITED STATES of America, Plaintiff,

v.

Royal N. HARDAGE; United States Pollution Control; Oklahoma National Stockyards Company; Dal–Worth Industries; Double Eagle; Samuel Bishkin, doing business as Eltex Chemical; L & S Bearing Company; Kerr–McGee Corporation; Cato Oil; PPG Industries; The Firestone Tire and Rubber Company; Foster Feed & Seed Co.; Texaco, Inc.; Powell Sanitation Service, Inc., Defendants,

HARDAGE STEERING COMMITTEE MEMBERS: Advance Chemical Distribution, Inc.; Allied–Signal, Inc.; AT & T Technologies, Inc.; Ashland Oil, Inc.; Atlantic Richfield Company; Borg–Warner Corporation; Exxon Corporation; Gencorp, Inc.; Bull HN Information Systems Inc.; Maremont Corporation; McDonnell–Douglas Corporation; Mobil Chemical Company; Nalco Chemical Company; Oklahoma Gas & Electric Company; The Oklahoma Publishing Company; Rockwell International Corporation; Texas Instruments, Incorporated; Uniroyal, Inc.; UOP, Inc.; Westinghouse Electric Corporation; Weyerhaeuser Company; Diffee Motor Company; Fruehauf Corporation, Fruehauf Division; Fruehauf Corporation, doing business as Hobbs Trailer;

MACKLANBURG–DUNCAN CO.; Magnetic Peripherals, Inc.; McDonnell Douglas Corporation; PPG Industries; Weyerhauser Company; Wolverine Corporation, Plaintiffs–Appellants and Cross–Appellees,

v.

AETNA CASUALTY AND SURETY COMPANY; Continental Casualty Company; Interstate Fire and Casualty Company; Stonewall Insurance Company, Defendants–Appellees and Cross–Appellants

and

Home Indemnity Company, Defendant.

McAlester Public Schools; Bob McBroom, doing business as American Furniture Stripping, individually; Sooner Ford Truck Sales, Inc., Defendants–Third–Party–Plaintiffs–Appellants and Defendants–Third–Party–Plaintiffs–Appellees,

v.

A.H. BELO, doing business as Dallas Morning News; JOC Oil, Morning News; ACME Fence & Iron Co.; Alamo Group Texas, Inc.; AAR Oklahoma, Inc.; Aircraftsman, Inc.; Agnew Auto Parts; American National Can Corporation; Anadite, Inc.; Arrow Tank Trucks; Aztec Manufacturing; Arrow Industries; Aviall of Texas, Inc.; BASF; Betz Laboratories, Inc.; Blanks Engraving; Beazers Materials; Blackwell Zinc Company, Inc.; Broadway Machine & Motor Supply, Inc.; The Bucket Shop, Inc.; Charles Machine Works, Inc.; Container Supply, Inc.; Carnation Company; Container Corp. of America; Continental Can Company, Inc.; Cook Paint & Varnish Co.; CTU of Delaware; Country Home Meat Company; Dart Industries; Delta Faucet Company; Del Paint Corporation; Dixico, Inc.; Downtown Airpark, Inc.; Drilex Systems, Inc.; Dubois Chemicals, Inc.; Dresser Industries, Inc.; Drillers Engine & Supply, Inc.; Fisher Controls; GAF; E C Industries; Fred Jones Manufacturing Company; General Dynamics; General Motors Corporation; Glidden Company; SCM Corporation; Groendyke Transport, Inc.; General Electric Company; Goodyear Tire and Rubber, Inc.; H.W. Allen; Hudiberg Chevrolet; Ingersoll–Rand Oilfield Products Company; Hinderliter Tool; Johnson Controls, Inc.; Johnson & Johnson Medical, Inc.; Ortho Pharmaceutical Corp.; Johnson–Johnson Hospital; Surgikos, Inc.; Kelly Moore Paint; Kerr Glass Manufacturing; Jones–Blair Co.; Laidlaw Waste; W.J. Lamberton; Master Motor Rebuilders, Inc.; Fixture Morris Co.; Madix; George McKiddie, doing business as Capitol Grease Co.; Motorolla; Northrop Worldwide Aircraft, doing business as Earl D. Mills; Packaging Corporation of America; Parker–Hannifin Corp.; O'Brien Corporation; Printpack, Inc.; Proctor & Gamble Manufacturing Co.; Quebecor Printing; Maxwell Communication; Riverside Press; Reliance Universal, Inc.; Rotex Corporation; Sherwin Williams Company; Star Manufacturing; Sermatech; Southwest Electric Company; Stearns & Foster Bedding; Susan Crane; Sublett & Associates, Inc.; Teccor Electronics, Inc.; TRW, Inc.; Turbodel; United Plating Works, Inc.; Valley Steel Products Company; Unit Parts Company; United States Brass Corporation; Van Der Horst USA; Waste Management of Oklahoma; Western Uniform & Towel Service; Zoecon Corporation; Xerox; Magnetic Peripherals, Inc.; Consolidated Clean.; ABCO, Inc.; Advance Packaging, Inc.; Amedco Steel Inc.; American Trailers; Anthes Inc., doing business as Anthes Hi–Reach; Arthur G. McGee & Company; B & J Tank Truck Service, Inc.; B.W. Solutions, Inc.; Bacon Transport Company, Inc.; Beauty Craft Vanities; Blackwell Industrial; Paul Boone, formerly doing business as Lawton Plating Co., individually; C & H Services, Inc.; CMI Corporation; Central Oklahoma Equipment Corporation; Cimarron Aircraft Corporation; Cimarron Manufacturing Company; Cliftco, Inc.; Day International Corporation; D–Mac Leasing, Inc.; Eureka Tool Company; Ferris Resources, Inc.; Hobbs Trailer; Vernon Garney, doing business as Auto Saver, individually; Glidden Coating, a Division of SCM Corporation; Hamm & Phillips Service Company; Industrial Fabrication Co.; Jackie Cooper Olds–GMC, Inc.; James Bute Company; William Jenkins, doing business as Foster Septic Tank, individually; J.F. Smith & Sons, Inc.; Kelsey–Hayes Corporation, also known as Kelsey Axle & Brakes Co.; Bill Lance; Larry Goad & Company; Lassiter Enterprises, Inc.; Materials Recovery Enterprises, Inc.; Ray McGee, doing business as Quality

Drum Service, individually; Grease Company; Medley Material Handling Inc.; Metroplex Sanitation, Inc.; Mistletoe Express Service, Inc.; Napko Corporation; Newman Bros. Trucking Company; Noble Chemical Corporation; The City of Norman; Oklahoma Tank Service; Oklahoma Transportation Company; Page Industries, Inc.; Powell Electric Manufacturing Company; George Powell, doing business as Powell Service Company, individually; Premier Industrial Corp., doing business as Kent Industries; RWR Steel Company; Rabar Enterprises, Inc.; Ram Transports, Inc.; Reliance Universal Inc.; S & S Plating Company; Solvent Manufacturing Company, Inc.; Sooner Oil Patch Services, Inc.; Spector Red Ball, Inc.; Steelcraft, Inc.; Sunwest Industries of Oklahoma, Inc.; Raymond Switzer, doing business as Switzer & Gypsum Lime Company, individually; T.I.P., Inc.; Thermo King Sales & Service of Oklahoma, Inc.; Triangle Engineering Company; Trigg Drilling Company, Inc.; Victor Equipment Co.; Waste Services, Inc.; Welch Enterprises, Inc.; Jim Wesley, doing business as Jim's Septic Tank, individually; Western Commercial Transport, Inc.; Westran Corporation; Witco, Inc.; Xal Corporation; Thomas Engel; A–Better Sanitation Service, Inc.; Reagent Chemical & Research, Inc.; Sun Exploration & Prod. Co.; Cameron Iron Works; J.C. Penney Co., Inc.; Rohm & Haas Seeds, Inc.; Phillips Petroleum Company; South Prairie Construction Co.; The Atchison, Topeka and Sante Fe Railway Company; Nordam Corp.; National Can Corp.; Land & Marine Rental Co., formerly known as Tesoro Land & Marine Rental Co.; Crowl Machine & Heat Treating Co.; Crane Carrier Co.; Corning Glass Works; Occidental Chemical; John Zink Co.; Dura–Chrome Industries, Inc.; The Dow Chemical Co., also known as Dow Industrial Service of the Dow Chemical Co.; Dowell Division of the Dow Chemical Co. & Brasos Oil & Gas Division of the Dow Chemical Co.; IUTS Liquidating Corp., formerly known as Industrial Uniform & Towel Supply Inc.; Clyde's Carburetor Service, Inc.; Amoco Prod. Co., formerly known as Pan American Petroleum; Dover Resources, Inc.; Hudiburg Chevrolet, Inc.; AMF Tuboscope; Eason Oil Co.; Fox–Smythe Transportation Co.; International Crystal Mfg. Co.; Kobe, Inc.; Nelson Electric, Power Service, Inc.; Newspaper Printing Corporation; Ryder Truck Rental, Inc., formerly known as Wilco Truck Rental, Inc.; Southwest Electric Company; Star Mfg. Co. of Oklahoma; Corken International Corp., formerly known as Corken Pump Co.; Glow–Lite Corp. (Artra); Ford Motor Co.; Monsanto Company; Conoco, Inc.; William C. Whitehead; Ilene J. Whitehead; E.I. Dupont de Nemours & Co.; Continental Oil Co.; Day International Corporation (Electric Hose & Rubber); Central Sales Promotion, Inc.; W & W Steel Co.; Chromalloy American; Brittain Brothers; ICO, Inc., formerly known as Fodco, Inc., formerly known as Sucker Rod Service, formerly known as Rodcore, Inc.; Homco International, doing business as A–1 Bit & Tool; Tom Brown's Optical Service, Inc., Farmers Home Administration, Third–Party–Defendants,

Ralph L. Lowe, Fourth–Party–Defendant,

and

Aetna Casualty and Surety Company; Continental Casualty Company; Interstate Fire and Casualty Company; Stonewall Insurance Company, Garnishee–Appellees and Garnishee–Appellants.

Nos. 93–6143, 93–6144, 93–6158, 93–6163 and 93–6181.

United States Court of Appeals, Tenth Circuit.

Dec. 5, 1995.

Susan L. Gates (Michael D. Graves with her on the brief) of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Plaintiffs–Appellants and Cross–Appellees in Appeal Nos. 93–6143 and 93–6163, and Defendants–Third–Party–Plaintiffs–Appellants and Defendants–Third–Party–Plaintiffs–Appellees in Appeal Nos. 93–6158 and 93–6181.

F. Thomas Cordell, Jr., of Huckaby, Fleming, Frailey, Chaffin & Darrah, Chickasha, Oklahoma (John Dexter Marble of Huckaby, Fleming, Frailey, Chaffin & Darah, Chickasha, Oklahoma, Victor C. Harwood, III, Edward Zampino, and Peter E. Mueller of Harwood Lloyd, Hackensack, New Jersey, with him on the brief), for Defendants–Appellees and Cross–Appellants in Appeal Nos. 93–6143 and 93–6163, and Garnishee–Appellees and Garnishee–Appellants in Appeal Nos. 93–6158 and 93–6181.

June L. Chubbuck of Chubbuck, Bullard & Hoehner, Oklahoma City, Oklahoma, Ira Goldberg of Long & Levit, San Francisco, California, Eileen M. Morris, Kenneth W. Elliott, and Duncan Parks of Elliott & Morris, Oklahoma City, Oklahoma, Donald R. Wilson and Brenda K. Peterson of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, and Marjorie H. Mintzer of Sheft & Sheft, New York, New York, filed briefs for Defendants–Appellees and Cross–Appellants in Appeal Nos. 93–6143 and 93–6163, and Garnishee–Appellees and Garnishee–Appellants in Appeal Nos. 93–6158 and 93–6181.

Richard C. Ford (Andrew M. Coats and Leanne Burnett with him on the brief) of Crowe & Dunlevy, Oklahoma City, Oklahoma, for Plaintiff–Appellant in Appeal No. 93–6144.

Stephen P. Friot (Susan Moebius Henderson with him on the brief) of Spradling, Alpern, Friot & Gum, Oklahoma City,

Oklahoma, for Defendants–Appellees in Appeal No. 93–6144.

Larry Derryberry and Bert E. Marshall of Derryberry, Quigley, Parrish, Solomon & Blankenship, Oklahoma City, Oklahoma, filed an amicus curiae brief for the Insurance Environmental Litigation Association.

Before BALDOCK, BARRETT, and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Appellants in these three cases disposed of hazardous wastes at the Hardage hazardous waste site ("Hardage Site") near Criner, Oklahoma. In three separate actions before two district courts, Appellants claimed insurance companies that had sold umbrella liability or comprehensive general liability ("CGL") policies to entities that disposed of. waste at the Hardage Site were obligated to provide coverage for environmental clean-up costs at the site. The insurance companies moved for summary judgment in each action on the grounds that the pollution exclusion clause of the CGL policies precluded coverage for damages arising from the disposal of waste at the Hardage Site. The insurance companies further argued that the discharges did not fall within the "sudden and accidental" exception to the pollution exclusion clause because the waste disposal at the Hardage Site was intentional, expected, and routine over a number of years.

The district courts entered summary judgment in favor of the insurance companies in each action. Each appeal presents the same narrow issue: whether, under Oklahoma law, the ongoing, numerous waste discharges at the Hardage Site were "sudden and accidental" within the exception to the pollution exclusion clause of the CGL policies. Because this issue has split the state courts, we abated these appeals pending the Oklahoma Supreme Court's definitive interpretation of the phrase "sudden and accidental" in a similar case involving the Hardage Site. Now that the Oklahoma Supreme Court has resolved the issue in *Kerr–McGee Corp. v. Admiral Ins. Co.*, 905 P.2d 760 (Okla.1995), we

apply controlling state law to the instant appeals and affirm.[1]

## I. Background

In 1972, Royal N. Hardage opened a hazardous waste disposal site near Criner, Oklahoma. The Oklahoma State Department of Health permitted the Hardage Site as an Industrial Hazardous Waste Land Disposal Facility in September 1972. Until shortly before the site closed in November 1980, the Hardage·Site was the only landfill in Oklahoma licensed for disposal of industrial hazardous wastes. Between 1972 and 1980, approximately 400 companies generated over eighteen million gallons of waste that were disposed of at the Hardage Site, including oil recycling wastes, paint stripper, acids, caustics, lead, cyanide, arsenic, pesticides, and PCBs.

During the early years at the Hardage Site, liquids and sludges from drums and tank trucks were mixed with soil and discharged into unlined pits, including the containment area known as the "main pit." Generally, wastes were not separated and different types of wastes were commingled in the same pits. As disposal areas filled, wastes were transferred to other areas. Drums of waste were no longer emptied into pits, but were piled into a large mound of drums and barrels. Ultimately, the Hardage Site consisted of chemical impoundments, including a large unlined main pit, a series of small temporary pits, and two large barrel or sludge mounds.

Activities at the Hardage Site resulted in environmental contamination. The contamination occurred through surface runoff from the containment area, deliberate placement of wastes outside the containment area, and the escape of substances from the containment area to areas at the site that did not provide containment protection. Specifically, contamination occurred as a result of:

(a) spraying of substances from the Main Pit in an attempt to reduce its volume;

(b) overflow of substances from the Main Pit as a result of heavy rainfall;

---

1. These cases were assigned to the same panel and involve the same legal issue. We therefore have consolidated our disposition of these cases herein.

(c) removal of waste from the Main Pit to be mixed with the soil at the Site and placed on what came to be referred to as the "Sludge Mound;"

(d) deliberate breaching of the containment area to cause materials to flow to other portions of the Site;

(e) surface runoff from the Sludge Mound and other unpermitted disposal areas during and following rainfall;

(f) rupturing of drummed waste outside of the Main Pit as a result of improper handling; and,

(g) transfer of substances from the Main Pit to unpermitted pits, ponds, and lagoons.

Appeal No. 93–6143, Aplt.App. at 293; *see also* Appeal No. 93–6144, Aplt.App. at 771–80.

In 1986, the Environmental Protection Agency ("EPA") filed a civil action in the district court against Royal N. Hardage, the owner/operator of the Hardage Site, pursuant to its authority under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675, amended by Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99–499, 100 Stat. 1613 (1986).[2] The EPA also named as defendants thirty-one companies, including Appellants in the instant appeals, who generated and disposed of waste at the Hardage Site. The EPA sought injunctive relief and reimbursement from the defendants for all investigatory, enforcement, and other response costs, and for future costs incurred by the United States ("the CERCLA action").

Most of the defendants in the CERCLA action organized themselves as the Hardage Steering Committee ("HSC"),[3] and eventually stipulated to liability under sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607. The HSC in turn filed third-party complaints against approximately 180 third-party defendants that had disposed of waste at the Hardage Site, including Downtown Airpark, Inc. and Double Eagle Refining Company ("Double Eagle"). The HSC sought contribution and reimbursement from Downtown Airpark and Double Eagle of the HSC's costs expended in taking response and remedial actions at the Hardage Site.[4] As relevant to Appeal No. 93–6144, Downtown Airpark settled HSC's third-party claim for $408,043.00. As relevant to Appeal Nos. 93–6143 and 93–6158 the district court entered summary judgment in favor of HSC, finding that Double Eagle was liable to HSC in the amount of $16,172,408.00 (the "HSC judgment"). The HSC judgment represents Double Eagle's proportionate share of the costs to implement the remedy at the Hardage Site.

During the years Double Eagle and Downtown Airpark disposed of waste at the Hardage Site, each company purchased various CGL policies from several insurance companies.[5] The relevant coverage language in

---

**2.** The EPA designated the Hardage Site a CERCLA facility pursuant to 42 U.S.C. § 9601(14)(A), and ultimately placed the Hardage Site on the National Priorities List or "Superfund List." *See* 40 C.F.R. Pt. 300, App. B, at 211 (1994). For a history of enforcement actions regarding the Hardage Site, see *United States v. Hardage*, 750 F.Supp. 1460, 1468–69 (W.D.Okla.1990), *aff'd in part and rev'd in part*, 982 F.2d 1436 (10th Cir. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

**3.** The HSC members are: Advance Chemical Co., Kimball Chemical, Allied Signal, Bendix/Prestolite, UPO, ARCO Chemical, Ashland Chemical Co., AT & T Technologies, Inc., Western Electric, Borg Warner Corporation, Exxon Corporation, Firestone Tire & Rubber Co., Gencorp. Inc., General Tire & Rubber, Diversitech, Holley Special Products, Honeywell, Inc., Industrial Disposal, Macklanburg–Duncan, Magnetic Peripherals, Inc., Control Data, Maremont Corp.,

Mobil Chemical Co., McDonnell Douglas Corporation, Nalco Chemical Co., OK Gas and Electric Co., OK Publishing Co., OK Graphics, Mistletoe, PPG Industries, Inc., Rockwell, Inc., Aero Communication, North American Rockwell, Southwest Tube, Texaco, Inc., Texas Instruments Incorporated, Uniroyal, Inc., Westinghouse Electric Corporation, Weyerhauser Company, and Wolverine Corporation.

**4.** Downtown Airpark, a corporation in the aircraft painting and maintenance business, and Double Eagle Refining Company, a corporation in the business of re-refining waste oil, disposed of hazardous wastes at the Hardage Site.

**5.** Double Eagle purchased CGL policies from Aetna Casualty and Surety Company, Continental Casualty Company, Interstate Fire and Casualty Company, and Stonewall Insurance Company. Downtown Airpark purchased CGL policies from

each policy is substantially similar, and obligates the insurer to defend and indemnify the insured for liability claims for damages based on bodily injury or property damage caused by an occurrence. The policies define an occurrence as: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Each policy also includes a qualified pollution exclusion clause which excludes coverage for:

> [B]odily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

Appeal No. 93–6143, Aplt.App. at 339 (emphasis added); *see also* Appeal No. 93–6143, Aplt.App. at 360, 389, 393, 408, 413; Appeal No. 93–6144, Aplt.App. at 413, 436, 449, 476. Simply put, the clause excludes coverage for a pollution discharge which causes bodily injury or property damage unless the discharge is "sudden and accidental."

The instant appeals involve two separate actions by the HSC to recover the HSC judgment from insurance companies that issued CGL policies to Double Eagle, and an action by Downtown Airpark to obtain coverage from insurance companies that sold Downtown Airpark CGL policies during the years it disposed of waste at the Hardage Site. The following sections summarize the relevant procedural background of each case on appeal.

## A. Hardage Steering Committee

### 1. Appeal No. 93–6143

On August 25, 1992, six members of HSC filed a federal diversity action for a declaratory judgment against five insurance companies that had issued CGL policies to Double Eagle during the years Double Eagle disposed of waste at the Hardage Site. For clarity, we refer to the six members of HSC who brought this declaratory judgment action as "HSC." As a judgment creditor of Double Eagle, HSC sought a declaratory judgment that the CGL policies issued by the insurance companies to Double Eagle provided coverage to satisfy the HSC judgment. The insurance companies moved for summary judgment on the grounds the pollution exclusion clause of the CGL policies precluded coverage for damages arising from Double Eagle's disposal of waste at the Hardage Site. Further, the insurance companies argued that Double Eagle's waste disposal did not fall within the "sudden and accidental" exception to the pollution exclusion clause because the discharges of waste were intentional, expected, and routine over a number of years.

The district court determined that HSC's claims were "indistinguishable" from those presented in *Oklahoma Publishing Co. v. Kansas City Fire and Marine Ins. Co.*, 805 F.Supp. 905 (W.D.Okla.1992), a case decided by the same district court and involving a company that, like Double Eagle, disposed of waste at the Hardage Site and sought coverage from insurance companies that had sold it CGL policies. In *Oklahoma Publishing Co.*, the district court ruled that under Oklahoma law, "the phrase 'sudden and accidental' requires a discharge that is both abrupt and unexpected or unintended by the insured." *Id.* at 910. Because the discharges at the Hardage Site occurred over a number of years pursuant to an intended disposal plan at the Hardage Site, the district court in *Oklahoma Publishing Co.* concluded "they cannot as a matter of law be deemed to be 'sudden and accidental.'" *Id.* at 910. Consequently, in *Oklahoma Publishing Co.* the district court ruled that the insurance companies did not have to provide coverage for the environmental clean-up costs at the Hardage Site because the contamination at issue was excluded from coverage under the pollution exclusion clause of the CGL policies. *Id.*

Applying its decision in *Oklahoma Publishing Co.*, the district court concluded that Double Eagle's long-term disposal of waste did not fall within the "sudden and acciden-

Continental Insurance Company and Fireman's Fund Insurance Company.

tal" exception to the pollution exclusion clause. Consequently, the district court concluded that the unambiguous language of the pollution exclusion clause precluded from coverage Double Eagle's liability for the contamination at the Hardage Site. The district court therefore entered summary judgment in favor of the insurance companies. HSC appealed.

### 2. Appeal No. 93–6158

On the same day HSC filed the declaratory judgment action against Double Eagle's insurers, HSC also initiated a garnishment proceeding in the CERCLA action to recover on the HSC judgment from Double Eagle's insurers.[6] Proceeding as garnishors pursuant to Okla.Stat. tit. 12, § 1171, HSC alleged that the CGL policies obligated the garnishee insurance companies to provide coverage to Double Eagle in the amount of the $16,172,-408.00 HSC judgment that represented Double Eagle's share of the costs to implement the remedy at the Hardage Site. As judgment creditor of Double Eagle, HSC contended it was entitled to garnish the insurance coverage due Double Eagle in the possession of the garnishee insurance companies.

The garnishee insurance companies moved for summary judgment. The district court cited *Oklahoma Publishing Co.*, and ruled "that the pollution exclusion clauses contained in the garnishees' insurance policies are not ambiguous and ... preclude coverage in this proceeding for any damage arising from the purposeful and deliberate discharge of hazardous substances by Double Eagle pursuant to its disposal plan at the Hardage Site." Consequently, the district court entered summary judgment in favor of the garnishee insurance companies. HSC appealed.

### B. Downtown Airpark— Appeal No. 93–6144

On May 13, 1991, Downtown Airpark filed a federal diversity action seeking a declaratory judgment against the Continental Insurance Company and Fireman's Fund Insurance Company, two insurers that had sold Downtown Airpark CGL policies during the years it disposed of waste at the Hardage Site. Downtown Airpark sought coverage under the CGL policies for its liability associated with the environmental contamination at the Hardage Site. Specifically, Downtown Airpark claimed the insurance companies were obligated to defend and indemnify Downtown Airpark for the $408,043.00 it had paid to settle HSC's third-party claim for contribution and reimbursement of HSC's response costs at the Hardage Site.[7]

The district court adopted the reasoning in *Oklahoma Publishing Co.* and concluded that Downtown Airpark's discharges of waste at the Hardage Site were not "sudden and accidental" but "were pursuant to [Downtown Airpark's] routine business practice concerning waste disposal." Consequently, the district court entered summary judgment in favor of the insurance companies, ruling that the insurance companies had no duty to defend or indemnify Downtown Airpark for its

---

6. The HSC initiated the garnishment proceeding in the original CERCLA action in which HSC, proceeding as third-party-plaintiffs, obtained the HSC judgment against Double Eagle. The record does not reveal why HSC sought to recover on the same HSC judgment in two separate actions from the same four insurance companies, *i.e.*, the separate declaratory judgment action and the garnishment proceeding in the CERCLA action.

7. Downtown Airpark also sought coverage from the insurance companies for its liability associated with the Mosley Road Landfill in Oklahoma City, Oklahoma, a CERCLA facility listed on the National Priorities List or "Superfund List." *See* 40 C.F.R. Pt. 300, App. B, at 211 (1994). On December 16, 1987, the EPA identified Down-

town Airpark as a potentially responsible party for its disposal of waste at the Mosley Road Landfill. Consequently, in the instant declaratory judgment action in the district court, Downtown Airpark claimed that the insurance companies were obligated to provide coverage for its liability arising from the Mosley Road Landfill. On appeal, Downtown Airpark maintains that the legal and factual issues regarding the Hardage Site "are identical with respect to Mosley Road and the Court's decision should apply equally to both sites." Appeal No. 93–6144, Aplt. Br. at 3 n. 1. For convenience our opinion refers only to the Hardage Site; however, our decision applies to Downtown Airpark's claims against its insurers regarding the Mosley Road Landfill.

settlement with HSC. Downtown Airpark appealed.

## II.

HSC and Downtown Airpark contend the district courts erred in entering summary judgment in favor of the insurance companies. Specifically, HSC and Downtown Airpark maintain the district courts erroneously construed "sudden and accidental" under Oklahoma law to mean "abrupt or quick and unexpected or unintended." HSC and Downtown Airpark argue that "sudden and accidental" under Oklahoma law means "unexpected and unintended." HSC and Downtown Airpark allege that Double Eagle and Downtown Airpark disposed of waste at the Hardage Site with the expectation that it would remain contained and would not pollute the environment. The environmental contamination at the Hardage Site was therefore "sudden and accidental" within the exception to the pollution exclusion clause HSC and Downtown Airpark assert, because it was neither expected nor intended. Consequently, according to HSC and Downtown Airpark, the insurance companies are obligated to provide coverage for the clean-up costs attributed to Double Eagle and Downtown Airpark because the contamination falls within the "sudden and accidental" exception to the pollution exclusion clause.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir.1995). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir.1993); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

## A.

▊ Our jurisdiction over Appeal Nos. 93–6143, 93–6163, and 93–6144 arises under 28 U.S.C. § 1291. There is a jurisdictional issue, however, underlying Appeal Nos. 93–6158 and 93–6181 that neither the district court nor the parties noticed, but of course, one that we do not waive. *E.g., Kokkonen v. Guardian Life Ins. Co. of America,* —— U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). HSC initiated the garnishment proceeding in the district court under case number CIV–86–1401–W, the CERCLA action in which the EPA filed suit against Royal N. Hardage and HSC. Federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b) provided the jurisdictional basis in the district court for the CERCLA action. It is unclear, however, whether the district court's ancillary or supplemental jurisdiction extends to the Oklahoma state law garnishment proceeding HSC brought against nonparties to the CERCLA action, namely the insurance companies that sold Double Eagle CGL policies. This issue has divided the circuits. *Compare Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.,* 68 F.3d 1016, 1020 (7th Cir.1995) (ruling that a garnishment action in a CERCLA suit is "part of the main action ... by virtue of the supplemental jurisdiction") *and Skevofilax v. Quigley,* 810 F.2d 378, 385 (3d Cir.) (en banc) ("We hold, therefore, that the district court has ancillary jurisdiction to adjudicate a garnishment action by a judgment creditor against a nonparty to the original lawsuit which may owe the judgment debtor an obligation to indemnify against the judgment, or any other form of property."), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987) *with Berry v. McLemore,* 795 F.2d 452, 455 (5th Cir.1986) ("The writ of garnishment ... is an action separate and independent from the action giving rise to the judgment debt.... [Therefore,] this court's ancillary jurisdiction to enforce its judgment *does not extend to these garnish-*

*ment actions.*") (emphasis added).[8] .

As a preliminary matter, we must determine whether this issue is governed by the supplemental jurisdiction statute, 28 U.S.C. § 1367, or by Tenth Circuit ancillary jurisdiction caselaw. In 1990 Congress codified the district court's supplemental jurisdiction in 28 U.S.C. § 1367, a statute "intended to supplant the related and somewhat overlapping concepts of ancillary and pendent jurisdiction." *Kelley v. Michaels,* 59 F.3d 1055, 1058 (10th Cir.1995); *see also* 28 U.S.C. § 1367(a). Section 1367 applies "to civil actions commenced on or after" December 1, 1990. Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 310, 104 Stat. 5089, 5114 (1990). Because the CERCLA action was filed in 1986, Tenth Circuit ancillary jurisdiction caselaw supplanted by § 1367 governs whether the district court in the CERCLA action had jurisdiction over the garnishment proceeding. *See Miller v. Glanz,* 948 F.2d 1562, 1567 n. 4 (10th Cir.1991) (applying law in effect prior to enactment of § 1367 because action was filed before December 1, 1990).

"Ancillary jurisdiction is an 'ill-defined concept,' that permits jurisdiction over ... third-party claims that are related to the principal case but do not enjoy a separate basis for subject matter jurisdiction." *Sandlin v. Corporate Interiors, Inc.,* 972 F.2d 1212, 1215–16 (10th Cir.1992). In *Sandlin,* we noted that a state law garnishment action against a third party holding property of a judgment debtor is "within the ancillary 'enforcement' jurisdiction of the federal court, *at least if the garnishee admits the debt.*" *Id.* at 1216 (emphasis added). However, when the garnishment proceeding is premised on an alleged indemnity agreement between a judgment debtor and an insurer, such as in the instant case, a district court does not automatically assume ancillary jurisdiction but, in some instances, must require

an independent basis for federal jurisdiction. "[W]hen postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist." *Id.* at 1217 (interpreting *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 498–99, 30 S.Ct. 601, 601–02, 54 L.Ed. 855 (1910)).

Applying *Sandlin* to Appeal Nos. 93–6158 and 93–6181, when HSC initiated the state law garnishment proceeding in the CERCLA action, it sought to hold the nonparty insurance companies liable on facts and theories that were not significantly different from the facts adduced in the CERCLA action that produced the HSC judgment. The CERCLA action and the garnishment proceeding each required a determination whether Double Eagle generated and disposed of hazardous wastes at the Hardage Site, and whether the waste discharges resulted in contamination at the site. Consequently, we conclude that in the CERCLA action the district court had ancillary jurisdiction over the garnishment proceeding HSC filed under Oklahoma state law to recover on the HSC judgment from the nonparty insurance companies that had provided CGL policies to Double Eagle. *Cf. LaSalle Nat'l Trust, N.A. v. Schaffner,* 818 F.Supp. 1161, 1164–65 (N.D.Ill.1993) (ruling that district court had supplemental jurisdiction under § 1367 over third-party action by CERCLA defendants asserting state-law indemnity claims against insurers because CERCLA complaint and indemnity claims involved same facts). Because the district court had ancillary jurisdiction over the garnishment proceeding in the CERCLA action, we have jurisdiction over Appeal Nos. 93–6158 and 93–6181 under 28 U.S.C. § 1291.

**B.**

■ Turning to the merits, the instant appeals present a single narrow issue:

---

**8.** The Supreme Court recently granted certiorari to determine whether a federal district court has ancillary jurisdiction to enforce a judgment, obtained against a corporation under the Employee Retirement Income Security Act, in a subsequent proceeding brought against a former officer and controlling shareholder of the corporation. *See Thomas v. Peacock,* 39 F.3d 493 (4th Cir.1994),

*cert. granted,* —— U.S. ——, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1995). In *Thomas,* the Fourth Circuit expressly declined to consider whether a garnishment action falls within the ancillary jurisdiction of a federal district court. *Id.* at 501 & n. 9. The Supreme Court's resolution of *Thomas* therefore will not resolve this precise issue.

whether, under Oklahoma law, the ongoing, numerous waste discharges at the Hardage Site by Double Eagle and Downtown Airpark were "sudden and accidental" within the exception to the pollution exclusion clause of the CGL policies. At the time of the district courts' decisions, the Oklahoma Supreme Court had not yet addressed this issue of Oklahoma state law. Subsequent to the filing of the instant appeals, however, the Oklahoma Supreme Court granted interlocutory review of the question whether the pollution exclusion clause precludes coverage for the long-term disposal of hazardous waste at the Hardage Site. Because the interpretation of the phrase "sudden and accidental" in the pollution exclusion clause has split the state courts,[9] we abated our resolution of these cases until the Oklahoma Supreme Court rendered a definitive ruling on this issue of Oklahoma law.

In *Kerr–McGee Corp. v. Admiral Ins. Co.,* 905 P.2d 760 (Okla.1995), the Oklahoma Supreme Court certified for review the question "whether a pollution exclusion clause in a general liability insurance contract applies to the long-term disposal of hazardous waste." *Id.* at 761. Plaintiff Kerr–McGee Corporation brought an action against insurance companies that had sold it CGL policies substantively identical to the CGL policies in the instant appeals. Kerr–McGee claimed that the insurance companies should reimburse Kerr–McGee for clean-up costs associated with its long-term disposal of hazardous waste at the Hardage Site.

The Oklahoma state trial court entered judgment in favor of Kerr–McGee, finding that the phrase "sudden and accidental" is ambiguous as a matter of law. The trial court interpreted the phrase in favor of the insured, and ruled that routine, long-term disposal of waste at the Hardage Site is "sudden and accidental" and thereby excepted from the pollution exclusion clause. *Id.* at 761–63.

The Oklahoma Supreme Court granted immediate review of the trial court's interpretation of "sudden and accidental" pursuant to Okla.Stat. tit. 12, § 952(b)(3). Construing the pollution exclusion clause, the Oklahoma Supreme Court concluded that "the terms 'sudden' and 'accidental' in the pollution exclusion clauses are unambiguous." *Id.* at 764. The Oklahoma Supreme Court observed that "[t]he ordinary and popular meaning of 'sudden' necessarily includes an element of time. Decisions finding ambiguity have focused on technical distinctions crafted by lawyers rather than the ordinary understanding of the word.... *Clearly, the ordinary meaning of 'sudden' cannot describe the gradual routine disposal of industrial waste that occurred over a number of years.*" *Id.* at 763–64 (emphasis added). The Oklahoma Supreme Court further noted that the focus of the term "accidental" in the pollution exclusion clause is on "whether the 'discharge, dispersal, release, or escape' was unexpected or unintended." *Id.* Applying this interpretation, the Oklahoma Supreme Court held that the waste discharges at the Hardage Site were not "unexpected or unintended" because Kerr–McGee intentionally disposed of the waste. *See id.* Because "Kerr–McGee's long-term disposal of indus-

**9.** *See Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.,* 52 F.3d 1522, 1527 n. 2, 1528 n. 3 (10th Cir.1995) (discussing split of authority); *St. Paul Fire and Marine Ins. Co. v. Warwick Dyeing Corp.,* 26 F.3d 1195, 1200 (1st Cir.1994) (same).

Generally, state courts divide on whether the term "sudden" in the phrase "sudden and accidental" is ambiguous because "sudden" arguably means "unexpected" or "unintended," both synonyms of "accidental," in addition to "abrupt" or "quick." Jurisdictions that conclude "sudden" is ambiguous generally interpret the phrase "sudden and accidental" in favor of the insured to mean "unexpected and unintended," but not "abrupt or quick and unexpected or unintended." ... Courts that have concluded "sudden and accidental"

means "unexpected and unintended" without reference to a temporal element of "abrupt" or "quick" interpret the pollution exclusion clause in favor of the insured, and conclude that instances of gradual or continuous pollution are "unexpected and unintended," and thereby within the exception to the pollution exclusion clause. *Quaker State Minit–Lube, Inc.,* 52 F.3d at 1527 n. 2. Courts that have concluded that "sudden and accidental" is unambiguous and means "abrupt or quick and unexpected or unintended," interpret the pollution exclusion clause to preclude coverage for continuous, routine, gradual, or continuous discharges of pollutants. *Id.* at 1528 & n. 3.

trial waste [at the Hardage Site] was neither sudden nor accidental" the Oklahoma Supreme Court reversed the trial court and ruled that the pollution exclusion clause precludes coverage for the long-term disposal of hazardous waste. *Id.* at 763–66.

*Kerr–McGee* governs the appeals by HSC and Downtown Airpark and mandates that we affirm the district courts' entry of summary judgment in favor of the insurance companies. Based on undisputed facts, Double Eagle and Downtown Airpark generated and disposed of hazardous waste numerous times at the Hardage Site pursuant to long-term, routine, disposal practices. In the words of the Oklahoma Supreme Court, "[c]learly, the ordinary meaning of 'sudden' cannot describe the gradual routine disposal of industrial waste that occurred over a number of years." *Kerr–McGee,* 905 P.2d at 764. Further, the environmental contamination at the Hardage Site occurred through deliberate placement of wastes outside the containment area, spraying of substances from the Main Pit to reduce its volume, intentional placement of wastes on the sludge mound, and deliberate breaching of the containment area. *E.g.,* Appeal No. 93–6143, Aplt.App. at 293. Such deliberate waste disposal actions cannot be described as accidental. *See id.* Under Oklahoma law, therefore, we hold that the long-term disposal of waste and resulting contamination at the Hardage Site by Double Eagle and Downtown Airpark were not "sudden and accidental" within the exception to the pollution exclusion clause. *Kerr–McGee,* 905 P.2d at 763–64. Consequently, the district courts did not err in ruling on summary judgment that the pollution exclusion clause of the CGL policies precludes coverage for the environmental clean-up costs attributed to Double Eagle and Downtown Airpark. Accordingly, we AFFIRM the district courts' entry of summary judgment in favor of the insurance companies in Appeal Nos. 93–6143,

93–6144, and 93–6158. We DISMISS Appeal Nos. 93–6163 and 93–6181.[10]

10. In Appeal Nos. 93–6163 and 93–6181, the insurance companies cross-appeal the district courts' denial of their motions to strike certain exhibits that HSC attached to its responses to the insurance companies' motions for summary judgment. Because we affirm the district courts' entry of summary judgment in favor of the insurance companies, the insurance companies' cross-appeals are moot. We therefore dismiss the cross-appeals as moot. *See Morgan v. City of Albuquerque,* 25 F.3d 918, 919 (10th Cir.1994).