In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2478

CYNTHIA FULLER,

*Plaintiff-Appellant,*

*v.*

DENIS R. MCDONOUGH, Secretary of Veterans Affairs,
and UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-01325 — **Manish S. Shah**, *Judge.*

———————————

SUBMITTED SEPTEMBER 8, 2023 — DECIDED OCTOBER 18, 2023

———————————

Before SYKES, *Chief Judge*, and ROVNER and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. While Cynthia Fuller worked for the Department of Veterans Affairs (VA), another employee, who was dating one of Fuller's supervisors, sexually harassed her. Around the time the harassment started, Fuller requested an accommodation for mental health disabilities and made another accommodation request nearly a year later. Following

unrelated workplace misconduct, the VA terminated Fuller. Relevant to this appeal, Fuller sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, alleging retaliation. The district court granted summary judgment for the VA, concluding that Fuller did not suffer any material adverse employment action and could not establish causation. Because the reprimand she received was not an adverse employment action, and Fuller cannot establish causation for her two other retaliation theories, we affirm.

I

We construe the facts in the light most favorable to Fuller. See *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). Fuller began work at the Jesse Brown VA Medical Center as a medical instrument technician in 2006. She primarily assisted physicians during colonoscopies and endoscopies, stocking the procedure room with sterile instruments. She also interacted with patients.

Fuller began treatment for adjustment disorder, anxiety, and depressed mood in 2016. In August 2016, a patient sent a letter to the Medical Center, complaining about how Fuller had treated him. Fuller's supervisor issued her an admonishment for unprofessional and inappropriate conduct, which was later reduced to a written letter of counseling. In September 2016, Fuller requested an accommodation from the VA for four weeks of leave to address her mental health.

In the year following her request, Fuller engaged in, and was the victim of, workplace misconduct. Sometime in fall 2016, Vincent Saulsberry, a VA employee who was dating Fuller's second-level supervisor (Dana Beatty), made sexual

remarks to Fuller. Fuller complained to VA management about the comments sometime in 2016 or 2017 (the timing of her complaints does not affect the resolution of this appeal). Fuller's direct supervisor, Kelli Goshay, testified that Beatty was out to get Fuller by November 2016 and wanted her disciplined for anything she did.

In January 2017, Fuller was part of a workplace dispute with a coworker, in which she called her coworker a "trick" (slang for prostitute). She received a letter of reprimand for inappropriate conduct in March 2017, following an investigation. In June 2017, a nurse reported that Fuller failed to prepare a procedure room, which caused a delay, and that she had been intimidating and rude. That same month, Saulsberry again made sexual remarks to Fuller, and she complained to management a second time. And in July 2017, Fuller had a disagreement with a coworker in front of a patient.

Fuller submitted a written request for an accommodation in August 2017, asking to be transferred out of her nursing service because of her mental health conditions. In September 2017, Ronald Fought, the nurse executive, wrote in an email that he was concerned that Fuller's accommodation request had not been timely addressed. The VA sought clarification of the request that same day and later decided to transfer Fuller to sterile processing services, where Fuller would work under a different supervisor. But Fuller was reported for violating the protocol for scope sterilization, and she was temporarily reassigned to volunteer services. In October 2017, Fought issued Fuller a notice of proposed removal. The notice stated that her proposed removal was based on her (1) failure to follow the scope protocol; (2) failure to carry out assigned

work, which caused a delay in patient care; and (3) conduct unbecoming a federal employee.

Fuller received a removal letter, accompanied by a last chance agreement, in November 2017. In the last chance agreement, the VA promised to hold her removal in abeyance for two years if Fuller made various promises, including to waive her right to bring existing or future claims against the VA and her right to use the Equal Employment Opportunity complaints procedure. Fuller rejected the last chance agreement in a letter, refusing to waive those rights. She stated in the letter that she was rejecting the agreement because it would both expressly and effectively waive those rights and because it did not guarantee that she would be treated the same as other employees in disciplinary or termination decisions.

Fuller began pre-complaint counseling with the Equal Employment Opportunity Commission after receiving the removal letter, and a few days later, she presented her letter rejecting the last chance agreement to the chief nursing officer. She was then terminated.

In January 2018, she filed a formal complaint with the VA's Office of Resolution Management, alleging discrimination and retaliation. The EEOC investigated the complaint but found no discrimination. In February 2019, Fuller sued the VA. Relevant to this appeal, she alleged retaliation in violation of Title VII and the Rehabilitation Act. Both the VA and Fuller moved for summary judgment, and the district court granted the VA's motion and denied Fuller's. Fuller appealed.

## II

We review the district court's grant of summary judgment de novo. See *McCann*, 909 F.3d at 886. To establish a Title VII or Rehabilitation Act retaliation claim, Fuller must show that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action." *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022); see *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 n.16 (7th Cir. 2006). On appeal, Fuller argues three retaliation theories, which we address in turn.

## A

Fuller first argues that the VA retaliated against her in violation of Title VII, in response to her complaint about Saulsberry's sexual harassment, by (1) reprimanding her in March 2017 and (2) skipping suspension in October 2017, moving directly from reprimand to proposal of removal.

But the March 2017 reprimand was not a material adverse employment action. As we have noted, "a documented reprimand alone is not an adverse action absent some tangible job consequence." *Scaife*, 49 F.4th at 1119 (cleaned up). The reprimand here "did not come with a low performance rating or even a pay cut." *Id.* It only stated that it could be used in determining an appropriate penalty if further misconduct occurred.

Fuller argues that the reprimand was an adverse action because it served as a building block for her later termination. But we have held that oral or written reprimands received by an employee under an employer's progressive discipline system do not implicate job consequences tangible enough to

establish an independent basis for Title VII liability. *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001), rev'd on other grounds, *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). In *Oest*, each oral or written reprimand an employee received brought her closer to termination, but she did not point to "any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities." *Id.* Indeed, "job-related criticism can prompt an employee to improve her performance and thus lead to a new and more constructive employment relationship." *Id.* Fuller does not identify any immediate consequence of the reprimand other than it brought her closer to termination. Without more, the reprimand was not an adverse action, and Fuller's first retaliation theory fails, as it relates to the reprimand.

As to Fuller's theory premised on the disciplinary progression to proposed removal, it fails because she cannot establish causation. We therefore need not address whether the progression constituted an adverse action. The parties agree that Fuller engaged in protected expression when she reported Saulsberry's sexual harassment. But though Goshay testified that Beatty wanted Fuller disciplined, Fuller offers no evidence that Beatty was involved with the progression to proposed removal. Instead, other individuals—namely Fought—participated in the decision to issue a proposed removal. And after the reprimand, but before the progression to proposed removal, Fuller engaged in serious misconduct when she violated the scope sterilization protocol. Fuller's retaliation theory fails.

B

Fuller's second retaliation theory is that the VA retaliated against her in violation of the Rehabilitation Act, because of her August 2017 accommodation request, by proposing her removal in October 2017. But Fuller also cannot establish causation for this theory. Nearly three months passed between Fuller's accommodation request and the proposal of removal. During that time, Fuller violated the scope sterilization protocol, breaking any causal chain between the request and proposal.

Fuller argues that evidence she was treated differently than similarly situated employees supports causation, but there are no employees similarly situated to her. To establish that other employees are similarly situated, Fuller must show that they are "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Fuller points to several employees, arguing they are similarly situated to her because they also misused scopes and requested accommodations. But those employees had no prior disciplinary history, unlike Fuller, and are thus not comparable to her in all material respects. And there is also no evidence that Fought intended to retaliate against Fuller. Instead, he wrote in a September 2017 email that he was concerned that her accommodation request had not been timely addressed, and the VA sought clarification of the request the same day. Because Fuller cannot establish causation, her Rehabilitation Act theory fails.

C

Fuller's third retaliation theory is that the VA retaliated against her in violation of Title VII and the Rehabilitation Act

by terminating her because she rejected the waiver provision in the last chance agreement. This theory fails too because she cannot establish that her rejection of the waiver provision caused her removal. The parties agree that Fuller's removal was an adverse action, but they dispute whether Fuller's refusal to sign the waiver provision in the last chance agreement is protected expression, and they dispute causation. We need not reach whether the refusal is protected expression because Fuller cannot establish causation.

Fuller does not need to show but-for causation, just that retaliatory intent played a part in her termination. See *Huff v. Buttigieg*, 42 F.4th 638, 645 (7th Cir. 2022). But the VA terminated Fuller for legitimate, non-retaliatory reasons: her violation of the scope protocol, her failure to carry out assigned work and the resulting delay in patient care, and conduct unbecoming a federal employee. The VA had already made the decision to terminate Fuller when it sent her the removal letter and the last chance agreement. And because the VA terminated Fuller for legitimate, non-retaliatory reasons, the clause requiring a waiver of her right to bring future claims does not affect the outcome of this appeal, even though the VA conceded that the clause was not legally enforceable. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII."). Fuller thus cannot establish that her rejection of the waiver provision caused her termination, and her third retaliation theory fails.

Because Fuller cannot establish a prima facie case for retaliation on any of her theories, the district court properly granted summary judgment for the VA.

AFFIRMED