In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 23-2140

JOHN BROOKS and GREGORY SIMMONS,

*Plaintiffs-Appellants*,

*v.*

CITY OF PEKIN, et al.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-01334 — **James E. Shadid**, *Judge*.

_____

ARGUED JANUARY 19, 2024 — DECIDED MARCH 8, 2024

_____

Before ST. EVE, KIRSCH, and LEE, *Circuit Judges*.

KIRSCH, *Circuit Judge*. John Brooks (a former police lieutenant) and Gregory Simmons (a former police officer) had a history of workplace misconduct while employed by the City of Pekin. Simmons was terminated in March 2018, and Brooks retired in July 2018 in the face of a complaint filed against him with the Fire and Police Commission. Soon after, Brooks and Simmons sued the City and four City employees. Relevant to this appeal, Brooks—who has sleep apnea—brought claims

against the City under the Americans with Disabilities Act, alleging that it: (1) failed to provide him a reasonable accommodation when it denied his request to transfer to a different work shift; (2) engaged in disparate treatment by disciplining and constructively discharging him because of his disability; and (3) retaliated against him because he filed several complaints related to his accommodation requests. Simmons alleged that the City retaliated against him in violation of Title VII of the Civil Rights Act of 1964 for reporting allegedly sexually harassing comments made by his former boss. The district court granted summary judgment for the defendants. Brooks only appeals his three claims against the City under the ADA, and Simmons only appeals his one claim against the City under Title VII. They do not appeal their other claims, including those against the individual defendants. Because the district court did not err, we affirm.

I

John Brooks joined the Pekin Police Department around 1995 and spent most of his early career working the second shift. He began receiving treatment for sleep apnea around 2000. In April 2012, he was promoted to lieutenant and was initially assigned to the third shift. He was transferred to the first shift in November 2013, then back to the third shift in July 2016.

Like Brooks, Gregory Simmons also began working for the Pekin Police Department around 1995. In December 2016, then-Lieutenant Greg Burris asked him about his sex life and stated that the woman Simmons was dating had "brain damage." Simmons reported Burris's comment to Deputy Chief Donald Baxter, and Burris consequently received a two-day suspension. In April 2017, Burris asked Simmons if he was

"fucking that Iraqi," and Simmons reported the comment to the Chief of Police, John Dossey. Burris was then placed on leave, and later that month, he accepted a last chance agreement with a permanent demotion to patrol and a 21-day suspension.

On May 1, Brooks was transferred to the first shift to replace Burris. The next day, Brooks impermissibly discussed union issues at a shift brief and asked a male officer whether "the drapes match the carpet." He received a letter of reprimand for this conduct.

On May 24, Officer Jennifer Melton reported to Baxter that Simmons had made inappropriate comments about her breasts. Melton alleged that Simmons commented on her breasts in front of her husband on March 3, and that on March 25, he made a similar comment to a civilian at a local restaurant. On June 5, Melton met with the HR Director, Sarah Newcomb, and expressed a fear of retaliation from Brooks for reporting Simmons because Brooks and Simmons were friends. The next day, June 6, Simmons received a notice of interrogation regarding his comments to Melton, which noted that he must avoid discussing the investigation with any other officer. But later that day, he called Brooks to discuss the investigation. The same day, Dossey placed Simmons on paid administrative leave. During an interrogation on June 19, Simmons denied speaking with Brooks about the investigation, despite their conversation on June 6. Dossey changed Simmons's administrative leave status to unpaid leave on July 21, and he filed a Fire and Police Commission (FPC) complaint against Simmons on August 23.

Meanwhile, in June 2017, Brooks was transferred to the second shift to prevent him from supervising Melton on the

first shift. Following the transfer, Brooks filed a reasonable accommodation request form on June 20 asking to be moved back to the first shift (known as the day shift) due to his sleep apnea. He also filed complaints related to the transfer: two complaints with HR in June and July, as well as an Illinois Department of Human Rights complaint in September, along with a request for dual filing with the Equal Employment Opportunity Commission. On July 12, Brooks met with the City to discuss his sleep apnea, and he provided a doctor's report stating that he could perform his job "with or without an accommodation." Brooks again met with City representatives on October 13 to discuss more potential accommodations for his sleep apnea. Several accommodations were offered, including: (1) allowing him to go home and nap during his shift; (2) giving him staggered shifts, rest periods, and the ability to sleep during his shift; and (3) accommodating a work schedule that would allow him to adjust to his medications. The meeting concluded with an agreement that Brooks would try the suggested accommodations over the next two weeks, and they would reconvene after his scheduled vacation.

But Brooks's relationship with the City continued to worsen. On October 26, the City learned that Brooks had been pressuring subordinates to support him against the City and that they feared retaliation from Brooks for reporting him. A day later, on October 27, the City learned of Brooks's charge with the IDHR and EEOC. Also on October 27, Dossey began to investigate Brooks and placed him on paid leave on November 13 (the day he returned from vacation). Thus, Brooks never had the opportunity to try the proposed accommodations. While he was on leave, the City learned that Brooks had been improperly possessing and storing police personnel files. On March 27, 2018, Brooks's leave status was changed to

unpaid leave. The next day, on March 28, an FPC complaint was filed against Brooks, but Brooks chose to retire on July 6 rather than go before the FPC and present evidence.

As for Simmons, on October 25, 2017, the City discovered that he had secretly recorded a January 2017 shift brief related to an incident where an officer struck a minor and then sent a copy of the recording to the minor's attorney. During an interrogation on February 16, 2018, Simmons admitted that he had secretly recorded the shift brief without permission in violation of department policy. On February 19, an amended FPC complaint was filed against Simmons to add allegations of his improper recordings. The FPC held an evidentiary hearing on February 21, and Simmons chose not to appear. On March 13, the FPC issued its decision ordering Simmons's termination.

In September 2018, Brooks sued the City under the ADA, 42 U.S.C. § 12101 et seq., alleging that it: (1) failed to provide a reasonable accommodation for his sleep apnea; (2) disciplined and constructively discharged him because of his disability; and (3) retaliated against him for his accommodation requests and his complaints internally and with the IDHR and EEOC. Simmons sued the City under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that it retaliated against him because he reported the alleged sexual harassment he experienced. The defendants moved for summary judgment, and throughout briefing, Brooks and Simmons repeatedly disregarded the Local Rules, including by filing an unauthorized amended response to the defendants' summary judgment motion after reviewing the defendants' reply. The district court granted summary judgment for the defendants. Brooks appealed as to his three ADA claims

against the City, and Simmons appealed as to his Title VII claim against the City.

## II

We review the district court's grant of summary judgment de novo. *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023).

## A

First, Brooks argues that the City failed to provide him a reasonable accommodation in violation of the ADA because it did not transfer him to the first shift. To establish a claim for failure to accommodate, Brooks must show that: "(1) he is a qualified individual with a disability; (2) the [City] was aware of [his] disability; and (3) the [City] failed to reasonably accommodate the disability." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014). The district court granted summary judgment to the City because Brooks failed to satisfy the third prong. We agree with that conclusion.

Reasonable accommodations are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." *Id.* (cleaned up). It is questionable whether Brooks needed an accommodation to perform his job functions, considering that he had previously worked the second or third shift for most of his career while experiencing the same health condition, and one of his doctors found that he could perform his job "with or without accommodation." But we need not decide that because even if Brooks needed an accommodation, the City explored possible accommodations with him. The City met with Brooks on at least two occasions to discuss potential

accommodations and offered him several options, such as an adjusted work schedule and allowing him to nap during his shift, that would have enabled him to perform his job duties. See *Grubb v. Sw. Airlines*, 296 F. App'x 383, 388 (5th Cir. 2008) (finding that the defendant "provided any accommodation it may have owed" the plaintiff for his sleep apnea by giving him "repeated offers and provisions of assistance, including time off for treatment"). Because the undisputed facts show that the City offered Brooks reasonable accommodations, "[t]hat is the end of our inquiry;" Brooks cannot show a failure to accommodate. *Bunn*, 753 F.3d at 683. It is therefore "irrelevant" that the City "fail[ed] to provide the exact accommodation [Brooks] would have preferred"—a transfer back to the first shift. *Id.*

B

Next, Brooks asserts that the district court erred in finding that he cannot establish a claim of disparate treatment because of his disability. He seeks to prove his disparate treatment claim under the indirect method of proof, which first requires a plaintiff to make a prima facie case by showing that: "(1) [he] is disabled within the meaning of the ADA; (2) [he] was meeting the legitimate employment expectations of [his] employer; (3) [he] suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). On appeal, the parties dispute elements three and four.

Brooks was on unpaid leave in March 2018, and we have found placement on unpaid leave to be an adverse employment action. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012). Brooks also argues that he suffered the

adverse employment action of constructive discharge. Though this argument is largely unsupported by the record, Brooks's failure to accommodate claim fails regardless at step four: Brooks cannot show that similarly situated employees (comparators) received more favorable treatment than him. Brooks argues that Burris is a valid comparator because he also made inappropriate remarks. But Brooks and Burris are not "directly comparable … in all material respects," *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (cleaned up), because they were not "engaged in similar conduct," *id.* at 847 (quotation omitted). While Burris made inappropriate comments about Simmons's sex life, the district court properly found that this conduct was less serious than Brooks's conduct. See *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007) ("[I]n deciding whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness."). Brooks similarly made inappropriate comments (such as asking an officer whether "the drapes match the carpet"), but he also impermissibly discussed union issues at a shift brief, pressured subordinates to support him against the City, and copied and retained disciplinary records of other officers.

## C

Lastly, Brooks challenges the district court's finding that he cannot establish a retaliation claim because he has no evidence that the City's reason for disciplining him was pretextual. For a retaliation claim under the ADA, Brooks must show that: "(1) [he] engaged in statutorily protected activity; (2) the [City] took adverse action against [him]; and (3) the protected activity caused the adverse action." *Trahanas v.*

*Northwestern Univ.*, 64 F.4th 842, 856 (7th Cir. 2023) (quotation omitted). If Brooks can establish a prima facie case of retaliation, the City "must then offer a legitimate, nondiscriminatory reason for its adverse action." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). Then the burden shifts back to Brooks to show that the City's reason was pretextual. *Koty v. DuPage Cnty., Illinois*, 900 F.3d 515, 519 (7th Cir. 2018). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (quotation omitted). We agree with the district court: Brooks cannot establish pretext.

The district court found that Brooks could establish a prima facie case of retaliation. But, as discussed above, the City had ample legitimate, nondiscriminatory reasons for placing Brooks on unpaid leave, such as Brooks pressuring subordinates (and thereby causing them to fear retaliation from him) and impermissibly possessing police personnel records. As the district court properly found, Brooks is unable to meaningfully contest the allegations against him. And even if the City were mistaken in its belief that Brooks engaged in impermissible conduct, Brooks cannot show that the stated reasons for his discipline were not genuine or, in other words, "a lie." *Id.*

D

Simmons argues that the district court was wrong to reject his retaliation claim based on his complaints of sexual harassment against Burris. To establish a retaliation claim under Title VII, Simmons must show that: "(1) [he] engaged in protected activity, (2) [he] suffered adverse employment actions, and (3) there was a causal connection between the protected

activity and the adverse employment actions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). Simmons's claim fails at elements one and three.

Simmons fails to demonstrate that he engaged in a protected activity because he cannot show that he had "a sincere and reasonable belief that [he] [was] challenging conduct that violates Title VII." *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1014 (7th Cir. 1997). To establish a claim for sexual harassment under Title VII, Simmons must show that he "was subjected to unwelcome sexual harassment … based on sex" and that it "creat[ed] an intimidating, hostile or offensive working environment … ." *Valentine v. City of Chicago*, 452 F.3d 670, 677 (7th Cir. 2006) (quotation omitted). While Burris's two comments were inappropriate, they were not because of Simmons's sex. See, e.g., *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment … is automatically discrimination because of sex merely because the words used have sexual content or connotations."). Simmons "has not established that his encounters with [Burris] reflected more than personal animosity or juvenile behavior." *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666 (7th Cir. 2005); see *id.* ("Sexual horseplay differs from sex *discrimination*, and Title VII covers only discriminatory conduct.") (emphasis in original). Nor were the comments "sufficiently severe or pervasive to alter the conditions of [Simmons's] employment and create an abusive working environment." *Oncale*, 523 U.S. at 78 (quotation omitted).

As for causation, Simmons cannot show that he suffered adverse employment actions because of his complaints against Burris. See *Giese v. City of Kankakee*, 71 F.4th 582, 590

(7th Cir. 2023) ("The plaintiff must show that the employer took the adverse employment action because of the protected activity."). Simmons was placed on unpaid leave in July 2017 after he made inappropriate comments about a female co-worker's breasts, violated the terms of the investigation into his comments by calling Brooks, and then lied about the call. And his FPC hearing (and subsequent termination) occurred after the City discovered that he secretly recorded and disseminated recordings of confidential meetings in violation of department policy. These significant intervening events preclude an inference of causation. See *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (finding no inference of causation when the plaintiff's violation of the employee guidelines "was a significant intervening event separating [plaintiff]'s complaints from his discharge").

## III

It is worth briefly addressing Brooks and Simmons's argument about their motion to amend their summary judgment response and the City's request for sanctions on appeal. Before the district court, Brooks and Simmons sought to amend their response to the defendants' summary judgment motion after reviewing the defendants' reply. The court rejected their request, noting their repeated and blatant disregard for the Local Rules. Because district courts have broad discretion to manage their dockets, *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1218 (7th Cir. 2023), we affirm. Lastly, the City requests that we find the appeal frivolous and impose sanctions on Brooks and Simmons. Though Brooks and Simmons are not prevailing on appeal, we decline to impose sanctions on them. See *In re Dordevic*, 67 F.4th 372, 389 (7th Cir. 2023) ("Frivolous, we

stress, is not a synonym for unsuccessful, or unlikely to succeed.") (cleaned up).

AFFIRMED