In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1648

CONTINENTAL INDEMNITY COMPANY, individually and as subrogee of The Linn Contracting Companies, Inc.,

*Plaintiff-Appellant*,

*v.*

BII, INC., an Illinois Corporation doing business as Paramount Post,

*Defendant*,

and

STARR INDEMNITY & LIABILITY CO.,

*Garnishee-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-05520 — **Rebecca R. Pallmeyer**, *Chief Judge*.

———————————

ARGUED JANUARY 25, 2024 — DECIDED JUNE 12, 2024

———————————

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff-appellant Continental Indemnity Company secured a default judgment for

$607,712.12 against defendant BII, Inc. arising from an injury to a worker at a construction site. Continental sought to collect on the judgment by adding appellee Starr Indemnity & Liability Company to the action as a garnishee using Illinois state law procedures under Federal Rule of Civil Procedure 69(a). Starr denied that its insurance contract with BII covered the workers' compensation claim that was the subject of Continental's default judgment against BII. The district court found that adjudicating the disputed scope of coverage under the Starr-BII insurance policy was outside its subject matter jurisdiction because it was too distinct, factually and legally, from the underlying suit between Continental and BII. The district court dismissed the proceeding against garnishee Starr, and Continental has appealed.

We must confess some uncertainty about the purpose of this appeal. As the district court explained, if Continental wants a federal forum to litigate this dispute with Starr, that forum is available for the price of filing one new civil action in the Northern District of Illinois. Still, Continental had the right to appeal, and we are obliged to decide it. As we explain below, we agree with the district court and affirm its dismissal for lack of jurisdiction.

At bottom, the appeal turns on the scope of a federal court's ancillary jurisdiction in the context of Rule 69 post-judgment enforcement efforts. Precedents from the Supreme Court and this circuit make clear the general principle that federal courts have ancillary enforcement jurisdiction to consider proceedings collateral to an underlying suit, but the subject of those proceedings must still be sufficiently related to the facts and legal issues of the original action. Attempting to adjudicate new issues of liability against new parties falls

outside the scope of ancillary enforcement jurisdiction and therefore cannot be done through certain enforcement proceedings under Rule 69. But at the end of the day, whether a proceeding falls into a federal court's ancillary jurisdiction will be a case-by-case, fact-dependent inquiry.

I. *Facts and Procedural History*

A. *The Injury to Mr. Lumpkins*

On August 19, 2016, Alfred Lumpkins was injured while working for defendant BII on a construction site on South Maplewood Street in Chicago, Illinois. In early June 2016, Linn-Mathes, a general contractor, had contracted with BII to perform post-construction cleaning work at the Maplewood Street site. The contract between Linn-Mathes and BII required BII to maintain insurance, including workers' compensation coverage, because it was responsible for the safety of its employees at the Maplewood Street site. After his injury, Mr. Lumpkins filed a workers' compensation claim against both BII and Linn-Mathes.

In most such cases of on-the-job injury, the employer's workers' compensation insurer will step in and handle the case through the Illinois workers' compensation system, and indeed, BII had purchased a workers' compensation insurance policy from Hartford Insurance Company. The problem was that BII had failed to pay premiums. BII's workers' compensation policy lapsed from July 11, 2016 to August 26, 2016. BII was not insured by Hartford when Mr. Lumpkins was injured.

Plaintiff Continental is Linn-Mathes's insurer. Pursuant to the contract between BII and Linn-Mathes, as well as under Illinois insurance law, Continental paid Mr. Lumpkins'

worker compensation claim in the amount of $451,402.28 plus defense costs and expenses in the amount of $137,576.31. This totaled $588,978.59. Continental then sought reimbursement from BII for the payment of the Lumpkins claim pursuant to the contract between Linn-Mathes and BII and Illinois insurance law. Hartford declined a claim made by BII to provide coverage for the Lumpkins claim because of the lapse in insurance coverage. During this time, BII never informed garnishee-appellee Starr of the Lumpkins claim.

B. *The Default Judgment*

In 2018, Continental filed this action in the Northern District of Illinois seeking a declaratory judgment that BII was liable for the Lumpkins workers' compensation claim and that BII was therefore indebted to Continental for the amounts it paid on the claim. All parties and we agree that the district court had subject matter jurisdiction over the declaratory judgment action based on diversity of citizenship under 28 U.S.C. § 1332. In July 2021, the district court entered a default judgment in favor of Continental in the amount of $607,712.12, comprising the $588,978.59 principal claim plus prejudgment interest and costs.

C. *Garnishment Proceeding*

At the time of the entry of the default judgment for Continental, then-District Judge John Lee presided over the case. After securing the judgment, Continental sought to collect on the judgment using Illinois state procedures, as allowed under Federal Rule of Civil Procedure 69(a). On August 17, 2021, Continental filed and served a "Non-Wage Garnishment Summons" against Starr, which had never been a party to the underlying suit that led to the default judgment. The

summons contained an attached affidavit signed by the secretary and general counsel of Continental attesting that, upon belief, Starr was either indebted to the judgment-debtor BII, or, alternatively, possessed or controlled property (other than wages) belonging to BII. More specifically, Continental said it believed that Starr held an insurance policy for BII that covered Mr. Lumpkins' claim that was the basis for the default judgment against BII.

Due to an internal mix-up, Starr's legal department never received the summons. As a result, Starr failed to file an appearance or answer by the deadline specified under the Illinois garnishment statute that was being used by the district court under Rule 69(a). Continental then filed a Motion for Entry of Conditional Judgment against Starr pursuant to 735 ILCS 5/12-706, again, acting under Rule 69. Judge Lee issued a conditional judgment against Starr on October 19, 2021 and ordered Starr to show cause why the judgment should not be made final. Continental also sent interrogatories to Starr asking for sworn answers to whether Starr had issued a workers' compensation policy to BII that was in force on the date of the Lumpkins injury and whether Starr ever assumed a defense of the Lumpkins claim.

This time Starr responded. It appeared in the district court and filed answers to the interrogatories. It explained that while Starr had issued an insurance policy for BII that was in force at the time of Mr. Lumpkins' injury, the policy was only for a different worksite and did not cover the Lumpkins claim. The answers also explained that Starr never assumed a defense of BII to the Lumpkins claim because BII never provided Starr notice of the case and never sought coverage for the claim under the Starr policy.

Continental filed a motion contesting the sufficiency of Starr's response and answer pursuant to 735 ILCS 5/12-711(a). Starr filed a response in opposition to Continental's motion and Judge Lee ultimately set a summary judgment briefing schedule.

D.  *District Court Decision*

After Judge Lee's appointment to this court in September 2022, the case was reassigned to Chief Judge Pallmeyer. After the parties completed summary judgment briefing, Chief Judge Pallmeyer ordered Continental to "show cause … why the garnishment proceeding it filed against [Starr] should not be dismissed for lack of subject matter jurisdiction." Both parties briefed subject matter jurisdiction.

Ultimately, Chief Judge Pallmeyer dismissed the garnishment proceeding, vacated the conditional judgment against Starr, and dismissed Starr from the case. *Continental Indemnity Co. v. BII, Inc.*, No. 18-cv-5520, 2023 WL 2333293, at *4 (N.D. Ill. Mar. 1, 2023). The court explained that it lacked subject matter jurisdiction over the garnishment proceeding because it fell outside the scope of the court's ancillary jurisdiction when proceeding under Rule 69. *Id.* at *2. Because the record showed complete diversity of citizenship between Continental and Starr, the court explained that Continental's "proper course of action is to file a complaint against Starr." *Id.* at *4. The court invited Continental to notify the Clerk of Court, should it file a complaint against Starr, that the suit was related to the original action against BII so that it could be assigned to the same judge. *Id.* Instead of filing a new complaint against Starr, Continental appealed the dismissal.

II. *Standard of Review*

"Subject-matter jurisdiction is the first issue in any case…." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). It is axiomatic that federal courts have an independent obligation to ensure that they have subject matter jurisdiction over each case heard, regardless of whether the parties have raised the issue. See *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021). This is because "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute…." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

"Once jurisdiction has been called into doubt, the proponent of federal jurisdiction bears the risk of non-persuasion." *Ware*, 6 F.4th at 731. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). We typically assess de novo a district court's decision to dismiss a claim for lack of subject matter jurisdiction. See *Democratic Party of Wisconsin v. Vos*, 966 F.3d 581, 584 (7th Cir. 2020). Other circuits have also applied de novo review specifically when analyzing a district court's decision whether to exercise its ancillary enforcement jurisdiction. See *Butt v. United B'hood of Carpenters & Joiners of America*, 999 F.3d 882, 886 n.2 (3d Cir. 2021); *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *Zimmerman v. City of Austin*, 969 F.3d 564, 567 (5th Cir. 2020); *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003); *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1312 (10th Cir. 2022). The applicable standard of review does not seem to have been contested in these cases, let alone decisive, and the cited opinions did not analyze the standard of review.

For reasons that will become apparent below, it may well be that a district court's decision on whether to exercise ancillary enforcement jurisdiction involves elements of case-by-case judgment that are close cousins to decisions about whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 or jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. We review such decisions not de novo but for an abuse of discretion. See, e.g., *Tobey v. Chibucos*, 890 F.3d 634, 652 (7th Cir. 2018) (supplemental jurisdiction); *Medical Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010) (declaratory judgment).

A district court will ordinarily be better situated to determine whether and to what extent the post-judgment ancillary proceedings would depend on new legal and factual issues, and we should ordinarily give deference to such judgment calls about mixed questions of fact and law. See *Salve Regina College v. Russell*, 499 U.S. 225, 233 (1991) ("deferential review of mixed questions of law and fact is warranted when it appears that the district court is 'better positioned' than the appellate court to decide the issue in question or that probing appellate scrutiny will not contribute to the clarity of legal doctrine") (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)). Ancillary enforcement jurisdiction may often present such questions where "there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court and according its determinations presumptive weight." *Miller*, 474 U.S. at 114.

We need not wrestle this question to the ground, however, for whether our review here is de novo or for an abuse of discretion, the result is the same. The district court correctly

found here that the garnishment proceeding was outside its ancillary enforcement jurisdiction.

III. *Analysis*

   A. *Rule 69 and Ancillary Enforcement Jurisdiction*

As previously explained, Starr was brought into this suit under Federal Rule of Civil Procedure 69(a), after a final judgment was entered. Rule 69(a) "provides a mechanism for a court to enforce its own judgments, drawing upon state law for the procedures to govern such proceedings." *Boim v. American Muslims for Palestine*, 9 F.4th 545, 552 (7th Cir. 2021). Rule 69(a) is a choice of law provision. It is not in and of itself jurisdictional. *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995). Enforcement actions under Rule 69 exercise a court's "ancillary" jurisdiction as part of the court's "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).

The Supreme Court has explained that federal courts exercise ancillary jurisdiction for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379–80 (1994) (citations omitted). The first category was codified by Congress in the supplemental jurisdiction statute, 28 U.S.C. § 1367. See *Boim*, 9 F.4th at 551.

The second category, perhaps most accurately called "ancillary enforcement jurisdiction," remains a matter of federal common law. *Id.*, citing *Peacock*, 516 U.S. at 354 n.5, 356, and

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3523, 3523.2 (3d ed. 2021) (explaining that ancillary enforcement jurisdiction is still governed by common law); see also *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1318 (10th Cir. 2022) ("Not governed by 28 U.S.C. § 1367, ancillary enforcement jurisdiction is a creature of the common law and thus is governed by caselaw."); *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 n.1 (5th Cir. 2014) ("The second type of ancillary jurisdiction, though not codified, remains a viable doctrine of ancillary jurisdiction and is often referred to as 'ancillary enforcement jurisdiction.'"); *Butt v. United B'hood of Carpenters & Joiners*, 999 F.3d at 886 n.3 ("[A]ncillary enforcement jurisdiction relates to the power of a federal court to exercise jurisdiction over separate *proceedings*. Although not mentioned in § 1367, this common-law doctrine has survived the codification of supplemental jurisdiction and remains independent of the statute." (emphasis in original)).

Without ancillary enforcement jurisdiction, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187 (1868). Such ancillary judicial power refers to a court's "power to protect its proceedings and vindicate its authority." *Kokkonen*, 511 U.S. at 380. Thus, we ask whether exercise of ancillary enforcement jurisdiction in a particular case is "essential to the conduct of federal-court business." *Id.* at 381.

B. *Question of Federal Law*

Whether a federal court has ancillary jurisdiction over an action or proceeding brought pursuant to Rule 69 is a matter of federal law, not state law (as the parties seem to contend).

We can see where this confusion may arise. While federal subject matter jurisdiction is indisputably a question of federal law, whether we have ancillary jurisdiction over a case is certainly affected by the relevant state-law procedures being used under Rule 69. Once federal subject matter jurisdiction is established, then, in the absence of a governing federal statute, the federal court's duty is to follow state law. See Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located….").

Federal courts look to state court precedents delineating the limits of a state's post-judgment enforcement mechanisms when employing them under Rule 69 and to resolve any disputes about the proper procedure. But whether the particular use of those state procedural mechanisms would fall inside or outside federal ancillary jurisdiction remains a matter of federal law and will vary depending on the facts of an individual case. See *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992) ("Rule 69 creates a procedural mechanism for exercising postjudgment enforcement when ancillary jurisdiction exists, but cannot extend the scope of that jurisdiction." (citations omitted)); *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1487 (7th Cir. 1988) ("But Rule 69(a) cannot be the end of our jurisdictional analysis since the Federal Rules neither create nor withdraw jurisdiction.")[1]; cf. *Laborers' Pension Fund v. Pavement Maintenance, Inc.*, 542 F.3d

---

[1] Some sources indicate that *Peacock* abrogated other aspects of our decision in *Argento*. We addressed the continuing vitality of *Argento* in *Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997), and *Yang v. City of Chicago*, 137 F.3d 522 (7th Cir. 1998), as discussed below.

189, 194 (7th Cir. 2008) ("State rules of procedure cannot negate subject-matter jurisdiction….").

Ancillary jurisdiction is just that, ancillary. For a proceeding to fall within such jurisdiction, it must be sufficiently related to the underlying, original dispute. See *Peacock*, 516 U.S. at 358. What do we mean by sufficiently? The question is whether use of the state procedures under Rule 69 would inject so many new issues into the underlying action as to render it essentially a new lawsuit. See *Yang v. City of Chicago*, 137 F.3d 522, 526 (7th Cir. 1998). This analysis is not dictated by state courts' treatment of their ancillary jurisdiction when applying these procedures. It is controlled by principles of federal jurisdiction.

We have said the same thing in the context of federal removal jurisdiction. "Whether a particular state judicial procedure qualifies as a separate action is not an all-or-nothing proposition. It depends on the context of each case in which it arises. Removability is a question of federal law, so the state's own characterizations of the proceeding are not decisive." *Travelers Property Casualty v. Good*, 689 F.3d 714, 724 (7th Cir. 2012) (citations omitted). Similarly, here, federal ancillary jurisdiction is a question of federal law. A state's own characterizations of the procedures are not decisive. Thus, we reject Continental's argument that if Illinois considers garnishment actions to be a supplemental or ancillary proceeding within state ancillary jurisdiction, see *Chandler v. Doherty*, 731 N.E.2d 1007, 1010, 314 Ill. App. 3d 320 (Ill. App. 2000), federal courts must also treat any procedure labeled a garnishment as ancillary to federal jurisdiction.

C. *Preliminary Matters*

    1. *Conditional Versus Final Judgment*

Before diving into the heart of the subject matter jurisdiction dispute, we must address a few preliminary matters. First, Continental argues that the conditional judgment entered against Starr by Judge Lee amounted to a final judgment on the issue of jurisdiction and was binding on Chief Judge Pallmeyer.

This assertion is a non-starter. The conditional judgment was entered pursuant to 735 ILCS 5/12-706(a) through the operation of Federal Rule of Civil Procedure 69(a). The Illinois statute specifically provides a mechanism for a garnishee to show cause why the conditional judgment should *not* be made final. Under Illinois law, "[t]he trial court has discretionary authority to vacate a conditional judgment." *Coleman Financial Corp. v. Schuddekopf*, 232 N.E.2d 104, 105, 89 Ill. App. 2d 150 (Ill. App. 1967). Given that Illinois courts have discretion to vacate such a conditional judgment at any time, Illinois law holds that such an order does not "finally determine the rights of the parties" and therefore is "not a final or appealable order." *Chicago Catholic Workers' Credit Union v. Rosenberg*, 104 N.E.2d 568, 571, 346 Ill. App. 153 (Ill. App. 1952). Even under Illinois law, the conditional judgment did not represent a final adjudication on the merits, let alone on federal subject matter jurisdiction.

More generally under federal civil practice, a question of subject matter jurisdiction may be raised at any point in the proceedings. When a case is transferred from one judge to another, the receiving judge has the power and the obligation to ensure that she has jurisdiction. See *Christianson v. Colt*

*Indus. Operating Corp.*, 798 F.2d 1051, 1055 (7th Cir. 1986) ("[I]t has been the settled rule that a court must make a determination of jurisdiction *sua sponte* when it first receives a case, and *at any time thereafter* in the course of the litigation should jurisdiction appear questionable." (emphasis added) (footnote omitted)); see also *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018) ("[A] second judge is 'significantly less constrained by the law of the case doctrine with respect to jurisdictional questions.' And the doctrine does not apply when the first judge never decided the precise issue before the second judge." (quoting *Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 903 (7th Cir. 2010)). Accordingly, Chief Judge Pallmeyer did not err by vacating the conditional judgment against Starr upon determining the court lacked subject matter jurisdiction to consider the action.[2]

2. *Rule 69 and State Procedures*

Federal Rule of Civil Procedure 69(a)(1) provides: "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Continental invoked Illinois's garnishment statutes in the district court. See generally 735 ILCS 5/12 Part 7.

---

[2] Like the district court, because we also find the garnishment proceeding falls outside the court's federal subject matter jurisdiction, we need not address whether and when a federal court may order a conditional judgment. See 2023 WL 2333293, at *1 n.3.

The state statute directs a judgment creditor to submit an affidavit to the court identifying a garnishee who the affiant believes either (1) is indebted to the judgment debtor, or (2) has possession, custody, or control of the judgment debtor's property. 735 ILCS 5/12-701. The judgment creditor must also provide a formal notice as specified in 735 ILCS 5/12-705 and a set of written interrogatories to be answered by the garnishee. 735 ILCS 5/12-701. When those documents are filed, the court issues a summons to the named garnishee commanding it to appear in court and answer the interrogatories in writing under oath. *Id.*

If the named garnishee fails to appear or answer as required, the court may then enter a conditional judgment against it for the amount due from the judgment debtor. 735 ILCS 5/12-706. The court may also order the garnishee to show cause why the conditional judgment should not be made final. If the garnishee again fails to appear and answer, then the court may confirm the judgment against the garnishee for the amount owed by the judgment debtor. *Id.*

If a garnishee does appear and answers the interrogatories, the judgment creditor may contest the truth or sufficiency of the garnishee's answers. 735 ILCS 5/12-711. If the judgment creditor does so, the court will try the contested issues in the same manner as any other civil case. *Id.*

Here, the district court acted under the Illinois statutes pursuant to Rule 69(a). It issued a summons to Starr, entered a conditional judgment once it failed to appear, and began to adjudicate Continental's objections to Starr's interrogatory answers through summary judgment briefing. These post-judgment proceedings, Continental contends, were all

undertaken pursuant to the federal court's ancillary enforce-ment jurisdiction.

D.  *Standard for Determining Scope of Ancillary Jurisdiction*

Here, the garnishment proceeding exceeded the scope of federal ancillary enforcement jurisdiction under Rule 69, whether we review de novo or for abuse of discretion**.** The garnishment added a new party, Starr, to the underlying suit between Continental and BII, and it raised new factual and legal issues necessary to adjudicate the terms and extent of coverage in the insurance policy between Starr and BII.

*Peacock* addressed limits on filing a new suit without an independent basis of federal subject matter jurisdiction. 516 U.S. at 359. Here an independent basis of federal jurisdiction appears to be available in a stand-alone suit by Continental against Starr. Nevertheless, Continental has chosen to frame its garnishment effort as an exercise of ancillary jurisdiction in the original suit between Continental and BII, and that is how we consider it. Accordingly, we apply the guidance from *Peacock*. See *Hudson v. Coleman*, 347 F.3d 138, 143 (6th Cir. 2003) (explaining that the "precise issue presented by the Plaintiff in actuality is whether the fact that the garnishment action is proceeding under the same case number as the orig-inal action, rather than in a second lawsuit, sufficiently distin-guishes the case from *Peacock*" and finding it did not).

In addition to "proceedings that are entirely new and orig-inal," the Supreme Court in *Peacock* also identified as outside the federal court's ancillary jurisdiction proceedings "where the relief sought is of a different kind or on a different princi-ple than that of the prior decree." 516 U.S. at 358 (cleaned up). This principle applies because ancillary jurisdiction is

incidental to the originally filed "case." See *National City Mort-gage Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011) ("A district court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented." (internal quotations and alteration omitted)); *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982) ("Ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice.").

If the ancillary proceeding is "founded not only upon different facts … but also upon entirely new theories of liability," *Peacock*, 516 U.S. at 358, then it is no longer ancillary and dependent on the underlying case. See *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934). Instead, it is fundamentally a "separate case" that needs an independent basis of federal subject matter jurisdiction. See *Yang*, 137 F.3d at 526; *Sandlin*, 972 F.2d at 1217 ("[W]hen postjudgment proceedings seek to hold non-parties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist." (applying *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 498–99 (1910)); cf. *Federal Savings and Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041–42 (9th Cir. 2004) (attorney effort to enforce promissory note from client not within court's ancillary jurisdiction because dispute was unrelated to the underlying action and was not a lien for legal services performed in that particular action).

The fact that Rule 69(a) is used to "execute" a judgment further supports this limit on ancillary enforcement jurisdiction. See *Peacock*, 516 U.S. at 359 ("the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution"), and 359 n.7 ("Rule 69(a), for instance, permits judgment creditors to use any *execution* method consistent with the practice and procedure of the State in which the district court sits." (emphasis added)). Execution typically involves the discovery and attachment of a judgment debtor's assets to satisfy the judgment, even if held by a third party, but not the litigation of new issues unrelated to the underlying action. See *Hudson*, 347 F.3d at 144 ("the typical garnishment proceeding referenced in *Peacock* contemplates the garnishee's paying the judgment creditor/garnishing party directly for funds, such as a salary, owed by the garnishee to the defendant in the underlying action").

The interests of judicial economy that underlie ancillary jurisdiction, see *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978), are not served by "the shifting of liability for payment of the judgment from the judgment debtor," *Peacock*, 516 U.S. at 358, or "impos[ing] an obligation to pay an existing federal judgment on a person not already liable for that judgment," *id.* at 357, or "an attempt to make [new] defendants answerable for the judgment already obtained," *Beecher*, 217 U.S. at 498.

Continental relies on the Supreme Court's explanation in *Peacock* that it has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments," *id.* at 356, including garnishment, *id.*, citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486

U.S. 825, 834 n.10 (1988). That general observation does not decide this case.

*Mackey* involved an attempt to collect a judgment against participants in an employee welfare benefit plan covered by the Employee Retirement Income Security Act of 1974 (ERISA) using a Georgia garnishment statute. *Mackey*, 486 U.S. at 827–28. The Supreme Court held that money judgments against ERISA welfare benefit plans are collectible through garnishment. *Id.* at 834. In so doing, however, the Court pointed out that the Georgia garnishment statute at issue was described by the Georgia Supreme Court as a "procedural" mechanism for the enforcement of judgments:

> Georgia's statute that provides for garnishment creates no substantive causes of action, no new bases for relief, or any grounds for recovery; the Georgia garnishment law does not create the rule of decision in any case affixing liability. Rather under Georgia law, postjudgment garnishment is nothing more than a method to collect judgments *otherwise* obtained by prevailing on a claim against the garnishee.

*Id.* at 834 n.10 (emphasis in original). The Supreme Court further noted: "Such is the usual understanding of garnishment." *Id.* Whether a garnishment proceeding falls within a federal court's ancillary enforcement jurisdiction turns on the nature of the dispute, not mere labels. "[W]hen the garnishment proceeding is premised on an alleged indemnity agreement between a judgment debtor and an insurer … a district court does not automatically assume ancillary jurisdiction but, in some instances, must require an independent basis for

federal jurisdiction." *Macklanburg-Duncan Co. v. Aetna Casu-*
*alty and Surety Co.*, 71 F.3d 1526, 1535 (10th Cir. 1995).

While Continental has proceeded under Illinois's garnish-
ment statute, the Illinois statute provides far broader substan-
tive remedies than the Georgia statute discussed in *Mackey*.
For example, 735 ILCS 5/12-711 specifies:

> *Contest of answer and trial*
>
> (a) The judgment creditor or the judgment
> debtor may contest the truth or sufficiency of
> the garnishee's answer and the court shall im-
> mediately, unless for good cause the hearing is
> postponed, proceed to try the issues. The an-
> swer of the garnishee shall be considered de-
> nied without further pleading.
>
> ***
>
> (c) The trial shall be conducted as in other civil
> cases.
>
> (d) If the finding or verdict is against a gar-
> nishee, appropriate judgment or other orders
> shall be entered against the garnishee and in fa-
> vor of the judgment debtor to whom the gar-
> nishee is indebted, or for whom the garnishee
> holds property, for the use of the judgment
> creditor, in the same manner as if the facts are
> admitted.

Many garnishment proceedings under the Illinois statute
will not require adjudication of new disputed issues. See, e.g.,
*Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d
1016, 1020 (7th Cir. 1995) ("In federal practice, garnishment to

collect a judgment is not—*at least, need not be*—an independent suit. It is part of the main action, prosecuted under [Rule] 69 by virtue of the supplemental jurisdiction." (emphasis added)); *Sandlin*, 972 F.2d at 1217 (explaining that "traditional garnishment or indemnity agreement claims" fall within federal courts' ancillary jurisdiction). We expect most will be straightforward. Often there will be no genuine dispute whether the garnishee holds property of the judgment debtor that may be garnished to execute the judgment. Such cases clearly fall within a federal court's ancillary enforcement jurisdiction. See *Macklanburg-Duncan Co.*, 71 F.3d at 1535 ("[A] state law garnishment action against a third party holding property of a judgment debtor is within the ancillary enforcement jurisdiction of the federal court, *at least if the garnishee admits the debt*." (emphasis in original) (internal quotations omitted)).

There are also cases where a garnishee disputes whether it holds assets of a judgment debtor or an obligation to indemnify, but resolving such a dispute will not inject new issues or theories of liability materially distinct from the underlying suit. Such conflicts also fall within a court's ancillary enforcement jurisdiction. See, e.g., *Yang*, 137 F.3d at 523–24, 526 (adjudicating whether officer was acting in scope of employment for purposes of city indemnification agreement did not inject new issues into underlying suit when court had previously determined officer was acting under color of law and within scope of employment for purposes of 42 U.S.C. § 1983); *Macklanburg-Duncan Co.*, 71 F.3d at 1535 (because Comprehensive Environmental Response, Compensation and Liability Act suit and ancillary garnishment proceeding both required determining whether judgment debtor had generated and disposed of hazardous waste leading to contamination,

garnishment action against judgment debtor's insurance companies was within court's ancillary enforcement jurisdiction). But this is not such a case. Here, Continental seeks to hold "the garnishee personally liable on the judgment based on some independent legal theory," *Hudson*, 347 F.3d at 144.

### 1. *Functionally Separate Action*

Recall that the original action between Continental and BII arose under the subcontractor agreement between BII and Linn-Mathes for the Maplewood Street construction site. The specific issue was whether BII was liable to indemnify Linn-Mathes (and thus Continental as Linn-Mathes's insurer) for a workers' compensation payment to a BII employee injured at the site. The case turned on the Continental insurance policy issued to Linn-Mathes, as well as the contract between Linn-Mathes and BII. Continental's amended complaint alleged that BII breached its contract with Linn-Mathes by failing to maintain workers' compensation insurance and that BII provided Linn-Mathes with an invalid Certificate of Insurance, not from garnishee Starr, but from Hartford Insurance Company. Dkt 34. Notably missing from the relevant allegations was any mention of a Starr insurance policy issued to BII.

The central issue in the garnishment proceeding—whether the Starr-BII insurance policy even covered the worksite where Lumpkins was injured—is a new issue. It was not raised in, let alone central or material to, the prior proceedings.[3] The court would have to consider new evidence

---

[3] The judgment against BII was secured via default. We thus look to Continental's complaint to determine the material facts and legal issues undergirding the judgment. We do not mean to imply, however, that a

and analyze the language of the insurance policy to determine its scope. Only then could the court decide whether Continental can collect its judgment against BII from Starr.

In other words, Continental seeks to hold a new party liable on a new theory. This is the type of dispute that courts have found to fall outside their ancillary enforcement jurisdiction. See *Peacock*, 516 U.S. at 358–59 (no ancillary jurisdiction over "entirely new theories of liability"); *Rizvi v. Allstate Corp.*, 833 F.3d 724, 727 (7th Cir. 2016) ( no ancillary jurisdiction over "new dispute governed by law distinct from the underlying [ ] action and based on different facts"); cf. *Atlas Biologicals Inc.*, 50 F.4th at 1322 (court had ancillary jurisdiction over fraudulent transfer claim because judgment creditor "asked the district court to answer the question about the validity of the transfer and thus the writ of attachment—not to impose liability on a third party").

### 2. *Distinguishing Prior Garnishment Actions*

Continental relies on several cases in this circuit to argue that adjudicating the Starr insurance policy's coverage falls within the scope of the district court's ancillary jurisdiction. All are easily distinguishable.

In *Yang v. City of Chicago*, 137 F.3d 522 (7th Cir. 1998), plaintiff Yang had previously brought a federal action against two police officers and the city of Chicago for violating his civil rights. The city was dismissed from the case, but a default judgment was eventually entered against the two officers. *Id.* at 523. Yang then sought to have the city indemnify the

---

gratuitous reference in the complaint to a possible insurance policy from non-party Starr would have affected the outcome of this appeal.

officers for the judgment pursuant to 745 ILCS 10/9-102 using a supplemental collection proceeding under Rule 69(a). *Id.* at 522. We found that the garnishment proceeding fell within the scope of ancillary jurisdiction. Garnishment depended on whether one of the police officers was acting in the scope of his employment. That was not so new an issue as to render the garnishment proceeding a functionally separate suit. *Id.* at 526. In an earlier appeal, we had found that the officer was acting under the color of state law for purposes of § 1983 liability, and that issue was factually close (though not identical) to whether the officer was acting within the scope of his employment. *Id.* at 523–24, 526 n.2. In the present suit, by contrast, determining the scope of the Starr insurance policy involves issues quite different from those adjudicated in the case against BII.

*Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995), similarly, is not helpful to Continental. It presented the type of traditional garnishment proceeding that is obviously within ancillary enforcement jurisdiction. In *Vukadinovich*, a defendant obtained a judgment for attorney fees after being subject to a frivolous lawsuit. The plaintiff refused to pay, so the defendant used Rule 69(a) to garnish the plaintiff's wages from the plaintiff's employer. *Id.* at 60, 62. There was no dispute that the garnishee-employer owed wages to the plaintiff. There were no new disputed issues distinct from the underlying action, and enforcing an attorney fee award that was a direct result of the underlying suit has been a largely uncontroversial use of courts' ancillary enforcement jurisdiction. See, e.g., *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending," including "motions for costs or attorney's fees."). Continental's attempt

to garnish a Starr insurance policy issued to BII, by contrast, raises new factual and legal disputes involving a new party, so *Vukadinovich* does not help it here.

Finally, Continental cites *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir. 1988). *Argento* was a pre-*Peacock* case, but we have explained that *Argento* remains good law to the extent that a post-judgment enforcement action "does not inject so many new issues that it is functionally a separate case." *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997) (explaining impact of Supreme Court's decision in *Peacock* on *Argento* and related cases). The facts of *Argento* were very close to *Yang*, discussed above, involving police officers' violations of a plaintiff's civil rights and the plaintiff's attempt to have the village and its insurer indemnify the officers through a Rule 69(a) proceeding. As we explained in *Argento*: "The liability of the Village and the insurer are related to the same events that underlie the original civil rights action." 838 F.2d at 1490. As in *Yang*, a § 1983 action against police officers and a municipality's obligation to indemnify officers who acted within the scope of their employment both depend on much the same underlying facts and closely related legal standards (acting under color of state law and within scope of employment). An indemnification claim in such cases does not necessarily inject new issues that render the post-judgment proceeding a functionally separate suit. We see nothing in *Argento* that conflicts with the district court's decision here.

E.  *Diversity Jurisdiction as Alternative Basis*

The district court in this case was correct that it lacked the subject matter jurisdiction to resolve the post-judgment garnishment action under its ancillary enforcement jurisdiction. That is how Continental framed the proceeding, and that is

how the district court and we have addressed it. Continental has also suggested briefly that the district court erred by not exercising diversity jurisdiction over the garnishment proceeding. As Chief Judge Pallmeyer explained, it appears that diversity jurisdiction would be available if Continental filed a separate civil action against Starr. She suggested that Continental file such an action if it believes it has grounds to do so.

For the same reasons ancillary jurisdiction is not available here, the district court properly treated the garnishment proceedings, in substance, as a new and different case. Putting aside the fact that a final judgment had already been entered against BII, Continental's argument can be illuminated by thinking about mandatory and permissive joinder under Federal Rules of Civil Procedure 19 and 20. Continental's claim against Starr certainly would not be required to be brought as part of the case against BII under Rule 19 (even if the final judgment had not already been entered against BII). Potential indemnitors and guarantors generally need not be sued in the action against the original defendant. See *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980). As for permissive joinder, under Rule 20, district courts have discretion, with "considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); accord, e.g., *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022) ("A district court may, in its discretion, deny joinder even if the Rule 20(a)(2) requirements are met."); see also *Brooks v. City of Pekin*, 95 F.4th 533, 541 (7th Cir. 2024) ("district courts have broad discretion to manage their dockets"). The remedy for even a *timely* attempt at misjoinder can include dismissal without prejudice. *UWM Student Ass'n*, 888 F.3d at 864. In effect, that is what the district court did here,

telling Continental to bring its (post-judgment) claim in a separate civil action. The court acted well within its discretion in doing so, and we do not understand why Continental has not followed that suggestion.

The judgment of the district court is AFFIRMED.